s:  sms/salancy/brief in support of motion to dismiss - es/11-19-18

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHAEL FLOOD, JR. and ALECIA      :     Civil Action No.:  2:18-cv-1310
FLOOD, individually and as Parents and    :
Natural Guardians of T.F., a minor,      :
     :
           Plaintiffs      :
     :
    vs.      :
     :
GEORGE VILLEGAS, JR. and PAM      :
VILLEGAS, individually and as Parents    :
and Natural Guardians of MEGAN      :
VILLEGAS; DAVID and CHRISTY      :
SHERK, individually and as Parents and   :
Natural Guardians of K.S., a minor; DAVID   :
and CHRISTINE SEAMAN, individually    :
and as Parents and Natural Guardians of    :
C.S., a minor; CRIS and KIMBERLY     :
SALANCY, individually and as Parents    :
and Natural Guardians of E.S., a minor;    :
DAVID and LYNN REINA, individually and   :
as Parents and Natural Guardians of H.R.,   :
a minor; SENECA VALLEY SCHOOL    :
DISTRICT; BUTLER COUNTY DISTRICT   :
ATTORNEY'S OFFICE; and BUTLER    :
COUNTY, PENNSYLVANIA,      :
     :
           Defendants.      :

## BRIEF IN SUPPORT OF MOTION TO DISMISS FILED ON BEHALF OF DEFENDANT E.S., A MINOR

## I.  PROCEDURAL HISTORY

The Complaint in the above-captioned matter was filed on October 1, 2018 and

Waivers of the Service of Summons were mailed to the defendants on October 5, 2018.

The Complaint contains ten Counts asserted against five teenage girls or their ten parents

1

and two Counts asserted against the Seneca Valley School District, the Butler County District Attorney's Office, and/or Butler County.

## II.     THE FACTUAL AVERMENTS

Factually, the Complaint describes two instances in which plaintiff T.F. was accused of committing a sexual assault.  The first incident occurred at the Zelienople Community Pool in July of 2017 and resulted in T.F. being fired from his job at the Pool and defendant K.S. reporting the alleged sexual assault to a Seneca Valley School District Guidance Counselor in October of 2017.  (Complaint ¶¶ 17-19)  The second incident occurred at the home of defendants David and Christine Seaman and their daughter, C.S., on March 23, 2018 and resulted in the alleged offense being reported to a Seneca Valley School District Guidance Counselor on March 26, 2018.  (Complaint, ¶¶ 22 and 23)  As a consequence of each of these reports, charges were brought against T.F. by the Butler County District Attorney's Office.  (¶¶ 20-21 and 24)

Plaintiff T.F. and his parents Michael and Alecia Flood claim that these reports of T.F. committing sexual assaults were false and that the alleged victims, K.S. and C.S. (who are not related and simply have last names beginning with the same letter), lied about T.F.'s conduct, as did also witnesses E.S. (also unrelated) and H.R. who were present at the Seaman residence on March 23, 2018.  (Complaint, ¶¶ 17-19, 23, and 27-30)  Finally, significant damages are claimed to have occurred as a result of these allegedly false accusations.  (¶¶ 25 and 36-42)

s:  sms/salancy/brief in support of motion to dismiss - es/11-19-18

### III.   THE ALLEGATIONS AND CLAIMS
###          DIRECTED AT E.S., A MINOR

In the first sentence of the Complaint, plaintiffs allege that the five teenage

defendants conspired to falsely accuse plaintiff T.F. of sexual assault on two occasions.

(Complaint, ¶1)  However, when describing the assault that took place at the Zelienople

Community Pool in the summer of 2017, plaintiffs allege that only K.S. and Megan

Villegas conspired to falsely accuse plaintiff T.F. (Complaint, ¶17)  E.S. is nowhere

mentioned as having any involvement whatsoever in this incident.  (*Id.*)  (Again, for

purposes of clarity, K.S., C.S. and E.S. are unrelated and simply have last names

beginning with the letter S.)

With respect to the March 23, 2018 incident, plaintiffs allege that C.S., with the

assistance of K.S., falsely reported to a Seneca Valley School District Guidance

Counselor that plaintiff T.F. had sexually assaulted her.  (Complaint, ¶23)  Childline was

contacted, and E.S. (who was present in the residence of C.S. at the time of the alleged

sexual assault) was interviewed by Butler County Alliance for Children as were also C.S.

(the alleged victim) and H.R. (who allegedly observed a portion of the assault).

(Complaint, ¶¶22 and 23 and Exhibit 11)

Finally, the plaintiffs allege that another student who was visiting E.S. at her

residence overheard C.S., H.R. and E.S. conspiring about an allegedly false order of the

events of March 23, 2018, agreeing not to tell anyone they had been drinking, and

acknowledging that H.R. had invited plaintiff T.F. to come to C.S.'s house on March 23rd

using C.S.'s cellphone.  (Complaint, ¶27)  Aside from this, it is alleged that E.S. stated to

a fellow student in April of 2018 that C.S. "exaggerated and made things [up] about the events of 3/23/18", and alleged that E.S. later claimed in the presence of yet another student that "C.S. lied about 'everything' about T.F.".  (Complaint, ¶¶28 and 29 and Exhibits 9 and 10)

Based on this, plaintiffs have brought claims against E.S. (and the other four teenagers) for:  Negligence (Count I); Civil Conspiracy (Count III); Defamation (Count IV); Malicious Prosecution (Count V); Invasion of Privacy (Count VI); Intentional Infliction of Emotional Distress (Count VII); Abuse of Process (Count VIII); Injurious Falsehood/Disparagement (Count IX); and Fraudulent Misrepresentation (Count X)

## IV.  STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (U.S. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotations omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (citing *Twombly*, 550 U.S. at 556). While the court must accept as true all of the factual allegations contained in the complaint, that requirement does not apply to legal conclusions.  *Iqbal*, 129 S. Ct. at 1949, 1953.  "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, to not suffice."  *Id.* At 1949 (citing *Twombly*, 550 U.S. at 555);

*see* also, *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) and *Wilkerson*

*v. New Media Tech. Charter Sch., Inc.,* 522 F.3d 315 (3d Cir. 2008).  The determination

of whether a complaint contains a plausible claim for relief is "a context-specific task that

requires the reviewing court to draw on its judicial experience and common sense."

*Iqbal*, 129 S. Ct. at 1950 (citing *Twombly*, 550 U.S. at 556).

The Third Circuit has explained the three-step analysis involved in determining

the sufficiency of a Complaint pursuant to the *Twombly/Iqbal* standard, as follows:  "(1)

identifying the elements of the claim, (2) reviewing the Complaint to strike conclusory

allegations, and then (3) looking at the well-pleaded components of the Complaint and

evaluating whether all of the elements identified in part one of the inquiry are sufficiently

alleged."  *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

## V.  ARGUMENT

### A.  Count IV - Defamation

#### 1.  Absolute Privilege

Almost 50 years ago, in the often quoted case of *Binder v. Triangle Publications,*

*Inc.*, 275 A.2d 53 (Pa. 1971), the Pennsylvania Supreme Court stated:

> **All communications pertinent to any stage of a judicial
> proceeding are accorded an absolute privilege which cannot be
> destroyed by abuse.  Thus, statements by a party, a witness**, counsel, or
> a judge **cannot be the basis of a defamation action** whether they occur in
> the pleadings or in open court.

**The reasons for the absolute privilege are well recognized.**  A judge must be free to administer the law without fear of consequences.  This independence would be impaired were he to be in daily apprehension of defamation suits.  **The privilege is also extended to parties to afford freedom of access to the courts, to witnesses to encourage their complete and unintimidated testimony in court**, and to counsel to enable him to best represent his client's interests.  Likewise, **the privilege exists because the courts have other internal sanctions against defamatory statements, such as perjury or contempt proceedings.**  (citations omitted)

*Id.* at pg. 56 (emphasis supplied)  The absolute privilege afforded to parties (including private prosecutors) and witnesses is embodied in the Restatement (Second) of Torts, §§587 and 588, respectively, both of which have been adopted in Pennsylvania.  See *Pawlowski v Smorto*, 588 A.2d 36, 42 (Pa.Super. 1991); and *Jennings v. Cronin*, 389 A.2d 1183, 1185 (Pa.Super. 1978)

The absolute privilege applies to not just testimony in court, but also to pre-trial communications, preliminary conferences and "information given and informal complaints made to a prosecuting attorney or other proper officer preliminary to a proposed criminal prosecution."  *Pawlowski v. Smorto, supra.* at 41-42; *Richmond v. McHale*, 35 A.3d 779 (Pa.Super. 2012); and Restatement (Second) Torts, §587, comment b.  As noted in *Pawlowski, supra.* at 41-42 , and *Binder, supra*, the privilege "does not depend on the motive of the defendant in making the statement", and "cannot be destroyed by abuse", even if the "statements may ultimately prove to be false or maliciously motivated."  See, also *Milliner v. Enck*, 709 A.2d 417, ,419 (Pa.Super. 1998).  For, as was recently observed by the Pennsylvania Supreme Court in response to a

petition for certification submitted by the United States Court of Appeals for the Third

Circuit:

> … [T]here is fundamental societal need for justice to be administered freely and efficiently through the eliciting of speech from parties and witnesses that may be accusatory or otherwise reflect negatively upon another's character.  Thus, notwithstanding any reputational harm that may ensue, **Pennsylvania, like many other jurisdictions, recognizes a judicial privilege providing immunity for communications which are made in the regular course of judicial proceedings** and are material to the relief sought.  The privilege covers statements by a party, a witness, an attorney, or a judge.  **Furthermore, the privilege is absolute, meaning that, where it attaches, the declarant's intent is immaterial even if the statement is false and made with malice.**

> The judicial privilege serves an essential function in guaranteeing access to the courts and permitting the free articulation and resolution of legal claims.  Hence, its purpose is to allow participants in judicial proceedings to speak freely without fear of civil liability.

> \* \* \*

> In view of the broad policy objectives reflected above, the judicial privilege is not limited to statements made in open court, but encompasses pleadings as well.  The Superior Court has extended the privilege further to "even less formal communications such as preliminary conferences and correspondence between counsel in furtherance of the client's interest," as well as to statements made to law enforcement officials for the purpose of persuading those officials to initiate criminal proceedings.  The Second Restatement of Torts is of this view:

>> A witness is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding or as a part of a judicial proceeding in which he is testifying, if it has some relation to the proceeding.

*Schanne v. Addis*, 121 A.3d 942, 947-48 (Pa. 2015).  (emphasis supplied, citations and footnotes omitted)[1]

In this case, plaintiffs have alleged in their Complaint that E.S. conspired with the other four teenagers "to falsely accuse T.F. of sexual assault"; that C.S. (the alleged victim) communicated a sexual assault accusation to a Guidance Counselor (a "mandatory reporter" under Pennsylvania law) who contacted Childline; that four days later E.S. was interviewed (as were also C.S. and H.R.) by Butler County Alliance for Children; and that ten days after that, the District Attorney of Butler County followed up by bringing charges against plaintiff T.F. (Complaint ¶¶ 1, 23, 24)  And in paragraph 56 of Count IV – Defamation, plaintiffs plead that E.S. and the other three alleged teen conspirators "falsely accused T.F. of sexual assault **to school and court personnel, as well as prosecutors** and other individuals."

Clearly, the communications with the bolded recipients set forth in this claim involve communications that are absolutely privileged and that portion of the claim and

---

[1] *Schanne v. Addis* bears some factual similarity to this case in that proceedings were commenced by the School District against the plaintiff teacher after the defendant disclosed to a guidance counselor that she had sexual relations with the teacher while a student.  In *Schanne*, however, the defendant was 26 years old at the time of the disclosure; had not been in high school for over 7 years; was a personal friend of the guidance counselor; and had "no desire or expectation that the allegation she made against *Schanne* would result in proceedings of any type." *Id.* at pgs. 949 - 951.  For those reasons the Supreme Court found the communication to be outside the scope of the privilege.

In contrast, this case involves 15-year-old students who, as plaintiffs allege throughout their Complaint, intended to report the alleged sexual assault with an expectation that proceedings would ensue.  (See, *e.g.,* Complaint, ¶¶ 1, 23, 24, 53, 56 and 63)  The *Schanne* court was aware of this difference and concluded with, "[w]e pause at this juncture to observe that this opinion should not be construed as attempting to resolve the distinct question of whether a privilege should pertain for school children who report misconduct … while they are enrolled." *Id.*  at 951.

all reputational and other damages alleged to result therefrom should be dismissed with prejudice.[2]

## 2.  Failure to Plead to Defamatory Communication

As to the "other individuals" who supposedly received defamatory communications from E.S., such statements would appear to be beyond the scope of the absolute privilege.  However, nowhere in the Complaint is there pleaded any defamatory communications made by E.S.

In paragraph 23, plaintiffs make the glib and conclusory allegation that E.S. and the other two girls who were interviewed by the Alliance for Children "repeated their lies about T.F. to other students and anyone else who would listen to them."  Aside from that, plaintiffs claim that E.S. made statements impugning the credibility of C.S. (the alleged sexual assault victim) and statements to the effect that plaintiff T.F. did not enter C.S.'s home without an invitation.  (See Complaint, ¶¶ 27-29 and Exhibits 8-10)  These statements are supportive of plaintiff T.F. and not at all defamatory as to him.

In short, one searches the Complaint in vain to find any recitation of any defamatory statement made by E.S.to the purported "other individuals" (or any identification of the time, place or recipients of any such statements) and plaintiffs have, thus, failed to plead a claim of defamation upon which relief can be granted.  See, 42 Pa.C.S.A. §8343(a)(1)-(5).

---

[2] As this Honorable Court is well aware, the existence of the absolute privilege is a question of law that may be raised by a Motion to Dismiss.  See, *Strader v. U.S. Bank National Association*, 2018 WL 741425 (W.D.Pa. 2018)

s:  sms/salancy/brief in support of motion to dismiss - es/11-19-18

> **B.  Count III -  Civil Conspiracy;**
> **Count VI – Invasion of Privacy;**
> **Count VII – Intentional Infliction of Emotional Distress;**
> **Count VIII – Abuse of Process; and**
> **Count IX – Injurious Falsehood (Disparagement)**

The absolute privilege discussed above is also implicated in plaintiffs' claims of conspiracy, invasion of privacy, intentional infliction of emotional distress, abuse of process, and injurious falsehood (disparagement).  See, *e.g., Morley v. Gory*, 814 A.2d 762 (Pa.Super. 2002) (conspiracy); *Strader v. U.S. Bank National Association, supra.* (invasion of privacy); *Tompson v.* Sikov, 490 A.2d 472 (Pa.Super. 1985) (intentional infliction of emotional distress); *Passon v.* Spritzer, 419 A.2d 1258 (Pa.Super. 1980) (abuse of process, conspiracy, and invasion of privacy); and *Triester v. 191 Tenants Ass'n.,* 415 A.2d 698, 701-702 (Pa.Super. 1979) (disparagement).

The reason for this is simple -- to allow immunity from defamation to be avoided by attacking the participant in adjudicative proceedings through other claims undermines the policy and purposes of the absolute privilege.  See, *Moses v. McWilliams*, 549 A.2d 950, 957-58 (Pa.Super. 1988).  Quoting from *Ranier's Dairies v. Raritan Valley Farms*, 117 A.2d 889, 895 (N.J. 1955), the Superior Court in *Moses* observed:

> **[i]f the policy, which in defamation actions affords an absolute privilege or immunity to statements made in judicial and quasi-judicial proceedings is really to mean anything then we must not permit its circumvention by affording an almost equally unrestricted action under a different label.**

*Moses*, at 957 (emphasis supplied).  The Court then also quoted with approval *Hoover v. Van Stone*, 540 F.Supp. 1118, 1124 (D.C. Del. 1982) wherein that Court noted:

s: sms/salancy/brief in support of motion to dismiss - es/11-19-18

> [the  counts of tortious interference with contractual relationships, abuse of
> process, and barratry] are all predicated on the very same acts providing the
> basis for the defamation claim.  Application of the absolute privilege solely
> to the defamation count … would be an empty gesture indeed, if, because
> of artful pleading, the plaintiff could still be forced to defend itself against
> the same conduct regarded as defamatory.  *Maintenance of these kindred
> causes of action, moreover, would equally restrain the ability of judges,
> parties, counsel and witnesses to speak and write freely during the course
> of judicial proceedings*.

*Moses* at 957-58 (emphasis original).  Those comments capture the essence of what

plaintiffs have done in the nine counts they have lodged against E.S. and the other

teenage defendants.

### 1.  Count III – Civil Conspiracy

In paragraph 53 of the four-paragraph Count for civil conspiracy, plaintiffs allege

that:

> 53.     K.S. conspired with C.S., E.S. and H.R. to accuse T.F. of
> sexual assault, for the purpose of bullying and harassing him and causing
> him to be expelled from school, as well as endure legal proceedings.  Their
> conduct was motivated by malice toward T.F.

As noted previously, the application and existence of the absolute privilege "does not

depend on the motive of the defendant in making the statement", and "cannot be

destroyed by abuse", even if the "statements may ultimately prove to be false or

maliciously motivated".  *Pawlowski, supra.* at 41-42 and *Binder, supra.* at 56.  It

therefore does not matter if E.S. was motivated by a desire to bully and harass plaintiff

T.F. or by malice.

11

s: sms/salancy/brief in support of motion to dismiss - es/11-19-18

And, it also does not matter that plaintiffs are now casting their claim as conspiracy instead of defamation.  In *Morely v. Gory, supra.*, the plaintiff sued the defendants (Gory and Coward) for conspiring to commit perjury, and committing perjury, during a three-day trial which resulted in a $16,209 civil judgment against plaintiff.  The Pennsylvania Superior Court held that the absolute privilege accorded to witnesses in Pennsylvania that is embodied in section 588 of the Restatement (Second) of Torts barred the civil conspiracy claim, citing *Ginsburg v. Halpern*, 118 A.2d 201, 202 (Pa. 1955) wherein the Supreme Court opined:

> Even if defendants had been shown to have volunteered to be witnesses and then gave false testimony against plaintiff[,] it would not constitute a valid cause of action.  In support of this we refer to the Restatement of Torts of the American Law Institute, Section 588.  We believe there is no civil action for perjury and apparently the plaintiff recognizes this doctrine of law but seeks to avoid it by claiming conspiracy.  The courts have uniformly held that where such assertions have been made they do not constitute a cause of action.

*Id.* See, also, *Passon v. Spritzer, supra.* (affirming a granting of a demurrer to, *inter alia*, libel and conspiracy claims on the grounds of absolute privilege).

Accordingly, plaintiffs have failed to state a claim against E.S. for civil conspiracy, as it is barred by the absolute privilege afforded witnesses.  Count III – Civil Conspiracy should, therefore, be dismissed with prejudice as to defendant E.S.

## 2.  Count VI – Invasion of Privacy

In paragraphs 66 and 67 of their Complaint, plaintiffs assert a claim for the branch of privacy known as unreasonable intrusion upon seclusion (¶66) and the branch of

s:  sms/salancy/brief in support of motion to dismiss - es/11-19-18

privacy known as false light publicity (¶67).  Both of these claims supposedly arise out of the facts pleaded in the Complaint, which involve two of the teenage defendants (K.S. and C.S.) reporting two sexual assaults by plaintiff T.F. to a guidance counselor, who as a mandatory reporter passed them on to Childline.  According to the Complaint, what happened after that, including any intrusion into plaintiff T.F.'s seclusion, was done by the Alliance for Children, the District Attorney's Office, law enforcement personnel, Butler County personnel and the judiciary and its personnel.  (Complaint, ¶¶ 19-22, 23-25, and 31-33)

With respect to the tort of intrusion upon seclusion, it is described in Pennsylvania as:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

*Tagouma v. Investigative Consultant Services, Inc.*, 4 A.3d 170, 174 (Pa.Super. 2010), quoting Restatement (Second) Torts §652B.  Intrusion upon seclusion obviously requires an intrusion by the defendant, or at least the defendant's agent.  In this case, no intrusion whatsoever is alleged in the Complaint to have been performed by any of the teenagers, including E.S., who is but a witness, not an alleged victim, and not even someone who claimed to observe a sexual assault.  Further, the police, the District Attorney's Office, the Alliance for Children, court personnel, Butler County personnel and the judiciary are clearly not the agents of the teenage defendants.  Plaintiffs have thus failed to plead a claim against E.S., a witness, for intrusion upon plaintiff T.F.'s seclusion.

13

s:  sms/salancy/brief in support of motion to dismiss - es/11-19-18

With respect to the false light publicity claim, the elements of that claim are set forth in §652E ("Publicity Placing Person In False Light") of the Restatement (Second) of Torts, which provides in pertinent part:

> One who gives **publicity** to a matter concerning another that places the other before the public in a false light is subject to liability to the other….

This Section embodies the law of Pennsylvania. *Krajewski v. Gusoff*, 53 A.3d 793, 805 (Pa.Super. 2012); and *Larsen v. Philadelphia Newspapers, Inc.*, 543 A.2d 1181, 1189 (Pa.Super. 1988). In the instant Complaint, there are no factual averments whatsoever that E.S. or any of the other teenage defendants gave the sexual assaults "publicity", which means "the matter is made public by communicating it to the public at large or to so many persons that the matter [becomes] … one of public knowledge." Restatement (Second) Torts §652E, Comment A. The plaintiffs have, as a result, also failed to plead a claim for false light publicity against defendant E.S.

More importantly though, these invasion of privacy claims also flow out of the same allegations of false reporting of sexual abuse as do the defamation and conspiracy claims. They are thus subject to the same absolute privilege as those claims. See, *Ganassi v. Buchanan Ingersoll, P.C.*, 540 A.2d 272 (Pa.Super 1988) (affirming preliminary objections granted as to claims for defamation and false light on account of absolute privilege); *Passon v. Spritzer, supra.* (affirming grant of demurer to, *inter alia*, claims of libel and invasion of privacy on account of absolute privilege); and *Strader v. U.S. National Bank Association, supra.* at pg. 15, Slip Opinion at pg. 19 ("[T]he privilege does apply to state law claims such as invasion of privacy.").

14

s:  sms/salancy/brief in support of motion to dismiss - es/11-19-18

Accordingly, plaintiffs have failed to state claims against E.S. for invasion of privacy, as they have failed to plead facts that support the necessary elements of those claims, and also because those claims are barred by the absolute privilege afforded witnesses.  Count VI – Invasion of Privacy should, therefore, be dismissed with prejudice as to defendant E.S.

### 3.  Count VII – Intentional Infliction of Emotional Distress

In this 3-paragraph Count, plaintiffs incorporate the same factual background that they did in the defamation, conspiracy and privacy Counts, and then plead in conclusory fashion in paragraphs 70 and 71 that what was done by the teenage defendants satisfies the various elements of intentional infliction of emotional distress.  While one can easily see how falsely accusing another of sexual assault could very well satisfy the outrageous conduct that this tort redresses, that doesn't change the fact that this is basically just recasting the defamation claim under a new label.  See, *Moses v. McWilliams, supra.* at 957.

As a consequence, plaintiffs cannot circumvent the immunity afforded the teenage defendants by the absolute privilege with which they are cloaked when reporting the alleged sexual assault to the authorities.  See, *Tompson v. Sikov*, 490 A.2d 472 (Pa.Super. 1985) (affirming the grant of a demurer entered on the grounds of absolute privilege to

intentional infliction of emotional distress claim brought against attorney).[3]  For this reason (and for the reason that E.S. is not alleged to have reported either of the sexual assaults), plaintiffs have failed to state a claim against E.S. for intentional infliction of emotional distress, and Count VII should be dismissed with prejudice as to defendant E.S., a minor.

### 4.  Count VIII – Abuse of Process

Abuse of process is another tort to which the absolute privilege has been applied. See, *Passon v. Spritzer, supra.*  It is defined as the use of legal process primarily to accomplish a purpose for which it was not designed.  *Shiner v. Moriarty*, 706 A.2d 1228, 1236 (Pa.Super. 1998), appeal denied 729 A.2d 1130 (1998); and *Triester v. 191 Tenants Ass'n., supra.* at 702-703.

In this Count, not only is the claim barred by absolute privilege, but plaintiffs have again failed to plead facts that support the alleged cause of action.  For, it is nowhere pleaded that any of the teenage defendants had any process issued against T.F. or his parents.  To the contrary, it is pleaded that the police, the District Attorney's Office, juvenile probation office and/or the court caused the issuance of the process in the two

---

[3] The U.S. Supreme Court's unanimous decision in *Hustler Magazine v. Falwell*, 108 S.Ct. 876, 485 U.S. 46 (1988), is also instructive here.  In that case the Supreme Court held that the First Amendment considerations also bar an intentional infliction of emotional distress claim based on protected speech. The Court noted that "bad motive" and "outrageousness" was not enough to overcome the First Amendment considerations and protections.  *Id.* at 882, 485 U.S. at 55.  Pennsylvania courts have said the same thing about the absolute privilege afforded witnesses and parties in adjudicative proceedings -- It "cannot be destroyed by abuse", even if the "statements may ultimately prove to be false or maliciously motivated", and it "does not depend on the motive of the defendant."  *Binder, supra.* at 56; and *Pawlowski, supra.* at 41-42.

s:  sms/salancy/brief in support of motion to dismiss - es/11-19-18

matters involving T.F. and then used it for its intended purpose -- to bring and prosecute

juvenile proceedings against T.F. for alleged sexual assaults.  (Complaint, ¶¶20-24 and

Exhibits 1-5)

Accordingly, plaintiffs have not, and cannot, state a claim against E.S., who was

but a witness in one of those juvenile proceedings, for abuse of process.  Count VIII –

Abuse of Process should, therefore, be dismissed with prejudice as to defendant E.S.


### 5.  Count IX – Injurious Falsehood (Disparagement)

Disparagement, also called disparagement of title, slander of title, defamation of

title, slander of goods, trade libel or injurious falsehood is a cause of action that arises in

"the commercial business arena".  *Triester v. 191 Tenants Ass'n., supra* at 701; and

*Maverick Steel Co., L.L.C. v. Dick Corporation/Barton Malow*, 54 A.3d 352, 354

(Pa.Super. 2012)  It involves a publication intended to cause a pecuniary loss that is made

by a defendant knowing the same to be false or with reckless disregard for the truth.  *Id.*

It is also an obvious and clear duplication of the defamation claim and suffers

from the same deficiencies.  Nowhere in the Complaint is there any recitation of any

statement published by E.S. evidencing an intent to cause plaintiffs pecuniary harm.

More importantly though, this claim, like the defamation claim, is barred by the absolute

privilege afforded E.S. as a witness, as that privilege also applies to the "injurious

falsehood" claim asserted by plaintiffs in this Count.  *Triester v. 191 Tenants Ass'n.,*

*supra*.  See, also, *F.B. Leopold Co., Inc. v. Roberts Filter Mfg. Co., Inc.* 882 F.Supp. 433

(W.D.Pa. 1995)

s:  sms/salancy/brief in support of motion to dismiss - es/11-19-18

Plaintiffs have, accordingly, failed to plead a claim against E.S. for "injurious falsehood", and in addition, the same is barred by the absolute privilege afforded E.S. as a witness.  Count IX – Injurious Falsehood (Disparagement) should therefore be dismissed with prejudice as to defendant E.S.

## C.  Count V – Malicious Prosecution

The fundamental prerequisite for any claim of malicious prosecution is that, "**[t]he defendant must have instituted proceedings against the plaintiff….**"  *Kelley v. Local Union 249*, 544 A.2d 940, 941 (Pa. 1988) (emphasis supplied).  See also, *e.g., Wainauskis v. Howard Johnson Co.*, 488 A.2d 1117, 1122 (Pa.Super. 1985) ("plaintiff must prove that the defendant instituted proceedings"); *Wright v. Schreffler*, 618 A.2d 412, 414 (Pa.Super. 1992) ("plaintiff must show that the defendant maliciously instituted proceedings against the plaintiff"); *McKibben v. Schmotzer*, 700 A.2d 484, 492 (Pa.Super. 1997) ("defendant must have instituted proceedings against the plaintiff"); and *Cosmas v. Bloomingdales Bros., Inc.*, 660 A.2d 83, 85 (Pa.Super. 1995) ("a plaintiff must show that the defendants instituted proceedings").  Those statements mean exactly what they say and it is no accident that the cases were brought either against private persons or entities that filed private criminal complaints (*Kelley, Wainauskis, McKibben* and *Cosmos*), or against the police officers that filed the criminal complaint (*Wright*).

In this case, plaintiffs do not plead in their Complaint that defendant teenagers filed any private complaints or otherwise instituted the juvenile proceedings brought

s:  sms/salancy/brief in support of motion to dismiss - es/11-19-18

against plaintiff T.F.[4]  Nor can they, for attached to the Complaint as Exhibits 1 and 4 are two Written Allegations filed with respect to plaintiff T.F. by Zelienople Borough Police Officers, and two Petitions Alleging Delinquency (Exhibits 2 and 5) filed by Butler County Juvenile Probation.  This is thus a case where the police and the probation office, not any of the teenage defendants, decided to initiate the proceedings and in fact initiated them.

In fact, all that is alleged in the Complaint with respect to the teenage defendants is that K.S. and C.S. each reported the alleged sexual assaults to a Seneca Valley Guidance Counselor who then notified Childline.  (Complaint, ¶¶19 and 23).  Thereafter, the teenagers (excepting for Megan Villegas) were interviewed by Butler County Alliance for Children and the police picked the matter up from there.  (*Id.* and Exhibits 1 and 4)  And, the only involvement that is alleged as to defendant E.S. is giving a statement to the Alliance for Children after the sexual assault allegations had already been made by the alleged victims K.S. and C.S.  Thus, none of the teenage defendants "instituted proceedings" against T.F., least of all E.S.

Accordingly, plaintiffs have failed to state a claim against defendant E.S. for malicious prosecution, and that deficiency cannot be remedied because, as plaintiffs themselves have pleaded, the Zelienople Police and Juvenile Probation instituted the

---

[4] Indeed, in paragraph 63 of the Count V plaintiffs carefully try to avoid the requirement that defendants initiate the proceedings, saying, "K.S., C.S., E.S. and H.R. knowingly provided false statements to school and court officials and to prosecutors to initiate criminal prosecution of T.F."  Providing statements or testimony is obviously not instituting proceedings.  It is being a victim and/or a witness.

s:  sms/salancy/brief in support of motion to dismiss - es/11-19-18

proceedings against plaintiff T.F., not defendant E.S.  Count V – Malicious Prosecution

should therefore be dismissed with prejudice as to defendant E.S.[5]

## D.  Count X – Fraudulent Misrepresentation

This is another Count in which plaintiffs attempt to stretch the elements of the

claim.  The elements of fraudulent misrepresentation were described in 1992 as, "(1) a

misrepresentation; (2) a fraudulent utterance thereof; (3) an intention by the maker to

**induce the recipient** thereby; (4) justifiable reliance **by the recipient** on the

misrepresentation; and (5) **damage to the recipient** as a proximate result of the

misrepresentation."  *Bash v. Bell Telephone Co. of Pa.*, 601 A.2d 825 (Pa.Super. 1992)

(emphasis supplied).  Plaintiffs clearly don't plead that they were the recipients of any

misrepresentations made by the teenage defendants.  Rather, plaintiffs plead that the

school and public authorities (*i.e.*, the Alliance for Children, the police, the District

Attorney's Office and the judiciary) were the recipients of the representations, and the

persons who relied upon them.  (See, Complaint, ¶¶19, 20, 23 and 24 and Exhibits 1-7)

Further, fraudulent misrepresentation is a business tort, like

"disparagement"/"injurious falsehood", and the first two elements have also been

described as, "(1) a representation; (2) which is **material to the transaction at hand** …"

*David Pflumm Paving & Excavating, Inc. v. Foundation Services, Co.,* 816 A.2d 1164,

1171 (Pa.Super. 2003).  See also, *Developers Sur. & Indem. Co. v. Mathais*, WL

---

[5] It is submitted that the requirement that the defendant initiate the proceedings is what takes this tort out of the sphere of the absolute privilege discussed *infra*.  If the tort could be maintained simply because one supplies information to the police, the intent and purposes of the immunity provided by the absolute privilege would be clearly and unquestionably defeated.

6504751, p. 7, Slip Opinion at p. 8 (M.D.Pa. 2013), citing *Wooding v. United States*, 374 F. Appx, 309, 312 (3d Cir. 2010).  In addition, Pennsylvania generally follows the Restatement (Second) of Torts in this area.  *Id.*  Section 549 of that Restatement describes the damages to be awarded for fraudulent misrepresentation, stating that those damages are paid to "[t]he recipient of a fraudulent representation" and are pecuniary losses measured by "the difference between the value of what he has received **in the transaction** and its purchase price…."  *Id.* (emphasis supplied).[6]  It is beyond argument that plaintiffs do not plead any transaction in their Complaint which could form the basis of this fraudulent misrepresentation claim.

Accordingly, plaintiffs have failed to state a claim against E.S. for fraudulent misrepresentation, and Count X – Fraudulent Misrepresentation should be dismissed with prejudice as to defendant E.S.

## VI.  CONCLUSION

For the above reasons, and most particularly on account of the immunity afforded defendant E.S. by the absolute privilege accorded her as a witness in adjudicatory proceedings, Counts III through X should be dismissed with prejudice as to defendant E.S., a minor.

---

[6] In fairness to plaintiffs it is noted that Section 557A of the Restatement (Second) of Torts provides for a recovery when a fraudulent misrepresentation causes physical harm.  It, however, limits that recovery to the person, land or chattel of the one who "relies on the misrepresentation."  As noted above, that is not plaintiffs.

s:  sms/salancy/brief in support of motion to dismiss - es/11-19-18

                                          Respectfully Submitted,

CIPRIANI & WERNER, P.C.

*s/Jennifer M. Swistak*                   *s/S. Michael Streib*
Jennifer M. Swistak, Esquire             S. Michael Streib, Esquire
Pa. I.D. No. 75959                        Pa. I.D. No. 30376
650 Washington Road, Suite 700           300 Oxford Drive, Suite 75
Pittsburgh, PA  15228                     Monroeville, PA  15146
(412) 563-2500                            (412) 566-1090
jswistak@c-wlaw.com                       smstreiblawfirm@hmbn.com


                  Counsel for Defendant E.S., a minor

s:  sms/salancy/brief in support of motion to dismiss - es/11-19-18

<u>CERTIFICATE OF SERVICE</u>

Service was made upon the following persons who are parties to this action, but

are not represented by counsel, by mailing a copy of the foregoing Brief and

accompanying Motion to them by First Class U.S. Mail, postage pre-paid, on December

3, 2018:


David Reina
5A River Road
Pittsburgh, PA  15238

Lynn Reina
103 Green Gables Manor
Zelienople, PA  15063


*s/S. Michael Streib*
S. Michael Streib, Esquire
Pa. I.D. No. 30376
300 Oxford Drive, Suite 75
Monroeville, PA  15146
(412) 566-1090
smstreiblawfirm@hmbn.com