IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL and ALECIA FLOOD, individually and as Parents and Natural Guardians of TYLER FLOOD, a minor, : : : : Plaintiffs, : : vs. : : GEORGE VILLEGAS, JR. and PAM VILLEGAS, individually and as Parents and Natural Guardians of MEGAN VILLEGAS; DAVID and CHRISTY SHERK, individually and as Parents and Natural Guardians of K.S., a minor; DAVID and CHRISTINE SEAMAN, individually and as Parents and Natural Guardians of C.S., a minor; CRIS and KIMBERLY SALANCY, individually and as Parents and Natural Guardians of E.S., a minor; DAVID and LYNN REINA, individually and as Parents and Natural Guardians of H.R., a minor; SENECA VALLEY SCHOOL DISTRICT; BUTLER COUNTY DISTRICT ATTORNEY'S OFFICE; and BUTLER COUNTY, PENNSYLVANIA, : : : : : : : : : : : : : : : : Defendants. : | Civil Action No.: 2:18-cv-01310-MRH HONORABLE MARK R. HORNAK |

**"SNITCHES GET STITCHES":
PLAINTIFFS' BRIEF IN OPPOSITION TO
DEFENDANTS' RULE 12(f) MOTIONS
AT DOCUMENT NUMBERS 34, 44, 46 AND 60**

AND NOW, come the Plaintiffs, Michael and Alecia Flood, individually and as

Parents and Natural Guardians of Tyler Flood, a minor, by and through their attorneys,

Craig L. Fishman, Esquire and Shenderovich, Shenderovich & Fishman, P.C. and file

the following "Snitches Get Stitches": Plaintiffs' Brief in Opposition to Defendants' Rule 12(f) Motions at Document Numbers 34, 44, 46 and 60:

I. **INTRODUCTION AND FACTS**

Pertinent paragraphs of the Complaint plead as follows:

1. "Mean girls" Megan Villegas, K.S., C.S., E.S., and H.R. conspired in person and via electronic communication devices to falsely accuse T.F. of sexual assault on two occasions. T.F. was forced to endure multiple court appearances, detention in a juvenile facility, detention at home, loss of his liberty, and other damages until several of the girls reluctantly admitted that their accusations were false. Even though the girls admitted their misconduct, T.F. was further harmed by the Seneca Valley School District and the Butler County District Attorney's Office which are biased in favor of females who accuse males of sexual assault, and biased against males falsely accused of sexual assault, and who are the subject of harassment and bullying at school. Although T.F. lost his liberty and his civil rights were infringed upon, his tormentors suffered no repercussions as a result of the lies they told.

27. Seneca Valley Intermediate High School female student A.K. visited E.S.'s house on May 30, 2018. During that visit, C.S., E.S. and H.R. conspired about the (false) order of events that would be presented to investigating authorities, and they agreed to exclude the fact that they had consumed alcohol. The "mean girls" disclosed that H.R. used C.S.'s phone to invite T.F. to the Seaman residence; he did not enter the residence uninvited (**Exhibit 8**).

34. Seneca Valley School District and Assistant Principal, Erin Mazer have refused to mark the academic records of K.S., C.S., E.S. and H.R. to reflect that they lied to support unwarranted criminal charges against T.F., claiming that their misconduct did not occur at school, even though the girls lied to a Guidance Counselor at school, triggering two separate cases charging T.F. with sexual assault, and even though the "mean girls"' lies to date have resulted in harassment and bullying of T.F. at school and at school sponsored events, and even though the school district permitted, supported and aided the Jackson Township police in handcuffing and shackling T.F. during the school day and

2

35. parading him out of the school into a police car. Seneca Valley School District failed to discipline the girls or mark their academic records due to gender-based discrimination against males falsely accused of sexual assault.

35. The "mean girls" will suffer no academic or personal consequences for their misconduct which critically damaged T.F. physically and psychologically and will impact his young life indefinitely.

70. The conduct of Megan Villegas, K.S., C.S., E.S. and H.R., as described in this Complaint, was extreme and outrageous, intentionally or recklessly causing severe emotional distress to T.F. The extreme and outrageous conduct of the "mean girl" Defendants went beyond all possible bounds of decency and would be regarded as atrocious and utterly intolerable in a civilized community.

98. Furthermore, T.F. suffered irrational and wholly arbitrary treatment by the Defendants because he was arrested, detained and prosecuted, and his academic record was tarnished, but his tormentors suffered no repercussions whatsoever, resulting in a "class-of-one" equal protection violation by the Defendants.

102. The conduct of Defendants creates the substantial risk that male students in the same position as T.F., who are falsely accused of sexual assault, will suffer harm because the female students tormenting them suffer no risk of any consequences whatsoever due to their misconduct.

103. Seneca Valley School District's response to the harassment of T.F. by the female students, and to the other students who continue to harass him due to the "mean girls'" false sexual assault allegations, amounted to deliberate indifference based solely upon his gender.

Megan Villegas and the minor Defendants were mean.

Megan Villegas and the minor Defendants are girls.

Megan Villegas and the minor Defendants are "mean girls".

3

Megan Villegas and the minor Defendants tormented the minor Plaintiff via false allegations of sexual assault.

Defendants Cris and Kimberly Salancy, and their minor daughter, E.S., filed a Motion to Strike the "mean girls" reference at Paragraphs 1, 27, 34 and 35 of the Complaint as scandalous and impertinent; however, they failed to contest the use of "mean girl" in Paragraph 70 and "mean girls" in Paragraph 103 of the Complaint.

Defendants, George, Pam and Megan Villegas; David and Christy Sherk, and their minor daughter, K.S.; and David and Christine Seaman, and their minor daughter, C.S., joined the Salancy motion contending that "mean girls" is scandalous and impertinent. The Seaman Defendants, in addition, aver that the reference to the Defendant girls as Plaintiff's "tormentors" at Paragraphs 1 and 98 of the Complaint is scandalous and impertinent, but they failed to contest Paragraph 102 of the Complaint which uses the word "tormenting".

**II.  "SNITCHES GET STITCHES" – MANTRA OF A "MEAN GIRL"**

Mean girl E.S. and her parents contend at Paragraph 5 of their motion that "*Mean Girls* is a popular teenage movie about four insecure and shallow high school girls who will do virtually anything to achieve "popularity", which they erroneously believe will bring them happiness and success." Defendants misstate the premise of the movie and also ignore the colloquial usage of the phrase "mean girls".

Wikipedia notes that "Mean Girls" is a 2004 American teen comedy film partially based on a 2002 non-fiction self-help book, "Queen Bees and Wannabees" which

describes female high school social cliques and the damaging effects they can have on girls.  The film was written by Tina Fey, who drew on her own experience at Upper Darby High School, near Philadelphia, as an inspiration for some of the concepts in the film.  The film cost approximately $17 million to make, and, according to IMDB.com, grossed over $129 million worldwide.  It was wildly successful, and the term "mean girls" has enjoyed popular usage to describe conduct alleged in the Complaint.

Urbandictionary.com describes "mean girls" as: "Girls who are bullies and use "girl aggression" (nasty comments, trickery, deceit, excluding people from events, spreading rumors, stealing boyfriends, etc.) to manipulate other girls.  They will use text messaging, AIM [AOL instant messaging], email, 3-way-calling, and any other weapon at their disposal to achieve these goals.  These girls are often popular because everyone is either afraid of them or wants to be like them.  They tend to have armies of followers ("friends"/wannabees) comprising their clique.  However, few people actually like them for who they are."

National "Mean Girls Day" is celebrated on October 3 each year, based upon a line from the movie.

The play "Mean Girls" opened on Broadway on October 31, 2017 at the August Wilson Theatre.  According to Broadwayworld.com, it continues to gross approximately $1.3 million per week.

Pop music icon Ariana Grande released the music video for her song "Thank U, Next" on November 30, 2018.  The lyrics to the song reference her relationship with the late Pittsburgh rapper Malcolm "Mac" Miller.  The music video reenacts a scene from the "Mean Girls" movie.

**Exhibit 1** is a private Instagram post by Defendant, E.S., where she engaged in witness intimidation shortly after this suit was filed by posting: "snitches get stitches". That behavior is consistent with conduct of a "mean girl" and of a "tormentor" and ironic because E.S. and her parents contend that characterizing her behavior as a "mean girl" is scandalous and impertinent.

### III.    LEGAL ANALYSIS

The brief of the Salancy Defendants is devoid of any citation to a precedential case, relying solely upon **Yates v. Allegheny Maternal Fetal Medicine**, a Memorandum Order by then – Magistrate Judge Bissoon.  **Yates** involved a *pro se* Plaintiff, who filed an employment discrimination suit including allegations that a named Defendant was complicit in the conduct which was the subject of the Complaint, not because of discrimination, but rather because Plaintiff witnessed the Defendant smoking marijuana and drinking alcohol.  The Court held that the allegations of drug and alcohol use were impertinent to the claim of discrimination.  **Yates** is inapposite because the minor Plaintiff's claims in the case *sub judice* directly arise from his being tormented by the "mean girls".

A Motion to Strike should not be granted merely because a Defendant objects to the inclusion of allegations in a Complaint which the Defendant deems to be extraneous unless the inclusion of the extraneous material is somehow prejudicial to the presentation of the merits of the action. *See*, **Davis v. Ruby Foods, Inc.**, 269 F.3d 818, 820-821 (7th Cir. 2001), where the Court opined that district judges should not be cast

"in the role of editors, screening Complaints for brevity and focus; they have better things to do with their time…. We also take this opportunity to advise defense counsel against moving to strike extraneous matter unless its presence in the Complaint is actually prejudicial to the defense. Such motions are what give "motion practice" a deservedly bad name [citation omitted]."

Although Courts possess "considerable discretion in disposing of a Motion to Strike under Rule 12(f), such motions are not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or the allegations confuse the issues in the case. Striking some or all of the pleadings is therefore considered a drastic remedy to be resorted to only when required for the purposes of justice." **Reardon v. ClosetMaid, Corp.**, 2013 WL 6231606 (W.D. Pa. 2013, J. Hornak); **Newlon v. Davis**, 214 WL 2199838 (W.D. Pa. 2014, J. Hornak); **Thornton v. UL Enterprises, LLC**, 2010 WL 1005021 (W.D. Pa. 2010, J. Cohill); **Tennis v. Ford Motor Co.**, 730 F.Supp. 2d 437 (W.D. Pa. 2010, J. McVerry); **Adams v. County of Erie, Pennsylvania**, 2009 WL 4016636 (W.D. Pa. 2009, J. McLaughlin).

The ultimate analysis of this issue requires the Court to determine whether the use of "mean girls" and "tormentors" in the Complaint may cause prejudice to the Defendants. Defendants provide no support for their bald assertions that the Complaint pleads scandalous and impertinent matter, other than alleging that media including local and national news organizations have referenced this case as the "mean girls" case. In so doing, Defendants ignore the fact that their outrageous conduct led to the publicity associated with this case, along with the fact that suit was filed just after allegations of

7

sexual assault were raised by Dr. Christine Ford against then – U.S. Supreme Court nominee Judge Brett Kavanaugh. Defendants cite no case law supporting their contention that media attention to a case is prejudicial (or that a pop culture reference in a Complaint is scandalous or impertinent).

The opinion of Judge Nora Barry Fischer in **Doe v. Plum Borough School District, et al.**, W.D. Pa. 17-CV-32 at Document Number 70 (attached as **Exhibit 2**) is instructive. I represented the Plaintiff in **Doe**, a young woman who was the victim of institutional sexual assault at Plum Borough High School, and I referred to the school as a "snake pit" in a press release, media interviews, and court documents. Judge Fischer acknowledged that the term "snake pit" was used by the Third Circuit in **D.R. v. Middle Bucks Area Vocational Technical School**, 972 F.2d 1364, 1374 (3rd Cir. 1992), and opined that the "snake pit" reference would not prejudice the defendants. Similarly, referring to the Defendants as "mean girls" and "tormentors" will not prejudice them, and in fact constitutes a fair and accurate description of their behavior.

### IV. CONCLUSION

Defendants' sole purpose in filing their Rule 12(f) motions is to continue their "mean girl" conduct and to continue to torment and harass the minor Plaintiff and his parents. Defendants improperly rely upon their bald assertions that fair, accurate and relevant descriptions of Defendants' conduct are scandalous and impertinent. Defendants cannot demonstrate prejudice. Defendants cite no precedential case law in support of their position. The original Rule 12(f) motion was filed by a "mean girl" who

attempted to harass and intimidate witnesses by posting "snitches get stitches".

Defendants' Rule 12(f) motions must be denied in their entirety.

        Respectfully submitted,

        Shenderovich, Shenderovich & Fishman, P.C.

        By: /s/ Craig L. Fishman
            Craig L. Fishman, Esquire
            PA I.D. #58753

            429 Fourth Avenue
            1100 Law & Finance Building
            Pittsburgh, PA  15219

            (412) 391-7610 – telephone
            (412) 391-1126 – facsimile
            clf@ssf-lawfirm.com

            Attorney for Plaintiffs

## **CERTIFICATE OF SERVICE**

All parties represented by counsel have been served by the Court's CM/ECF system. David Reina and Lynn Reina are unrepresented, and have been served with this document via email at the email addresses listed on their Waiver of the Service of Summons forms as follows:

Lynn Reina (shields148@hotmail.com)

David Reina (pghsteelers74@hotmail.com)


    /s/ Craig L. Fishman
Craig L. Fishman, Esquire
Attorney for Plaintiffs