## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL and ALECIA FLOOD, individually and as Parents and Natural Guardians of TYLER FLOOD, a minor, | : | Civil Action No.:  2:18-cv-01310-MRH |
| | : | |
| | : | HONORABLE MARK R. HORNAK |
| | : | |
| Plaintiffs, | : | |
| | : | |
| vs. | : | |
| | : | |
| GEORGE VILLEGAS, JR. and  PAM VILLEGAS, individually and as Parents and Natural Guardians of MEGAN VILLEGAS; DAVID and CHRISTY SHERK, individually and as Parents and Natural Guardians of K.S., a minor; DAVID and CHRISTINE SEAMAN, individually and as Parents and Natural Guardians of C.S., a minor; CRIS and KIMBERLY SALANCY, individually and as Parents and Natural Guardians of E.S., a minor; DAVID and LYNN REINA, individually and as Parents and Natural Guardians of H.R., a minor; SENECA VALLEY SCHOOL DISTRICT; BUTLER COUNTY DISTRICT ATTORNEY'S OFFICE; and BUTLER COUNTY, PENNSYLVANIA, | : : : : : : : : : : : : : : : : : : | |
| | : | |
| Defendants. | : | |

## BRIEF IN OPPOSITION TO PLAINTIFFS' RESPONSE TO THE RULE 12(b)(6) MOTIONS OF THE INDIVIDUAL DEFENDANTS AT DOCUMENT NUMBERS 36, 38, 40, 42, 47, 49, 54, 56 AND 58

AND NOW, come the Plaintiffs, Michael and Alecia Flood, individually and as

Parents and Natural Guardians of Tyler Flood, a minor, by and through their attorneys,

Craig L. Fishman, Esquire and Shenderovich, Shenderovich & Fishman, P.C. and file

the following Brief in Opposition to Plaintiffs' Response to the Rule 12(b)(6) Motions of

the Individual Defendants at Document Numbers 36, 38, 40, 42, 47, 49, 54, 56 and 58:

I.    **INTRODUCTION AND FACTS**

Mean girls Megan Villegas and K.S. conspired to falsely accuse T.F. of sexual assault in July 2017.

On or about October 3, 2017, K.S. falsely accused T.F. of sexual assault to a Seneca Valley Intermediate High School Guidance Counselor.  In March 2018, mean girls K.S., C.S., E.S. and H.R. conspired to falsely accuse T.F. of sexual assault.  The minor Plaintiff's civil rights were violated by the Butler County District Attorney's Office, Butler County and Seneca Valley School District, which also committed a Title IX gender discrimination violation.

II.    **STANDARD OF REVIEW**

When ruling on a Motion to Dismiss, the court must accept as true all allegations within the four corners of a complaint, and all inferences reasonably drawn therefrom, and view them in a light most favorable to the Plaintiff.  **Bryson v. Brand Insulations, Inc., 621 F.2d 556, 559 (3d Cir. 1980),** *quoting*, **Mortenson v. First Federal Savings & Loan Association, 549 F.2d 884, 891 (3d Cir. 1977).**

The issue is not whether the Plaintiff will ultimately prevail, but rather whether Plaintiff can prove any set of facts consistent with the averments of the Complaint which would show the Plaintiff is entitled to relief.  Dismissal is appropriate only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations.  **Vavro v. Albers, 2006 WL 2547350 (W.D. Pa. 2006, J. Cercone).**

A Rule 12(b)(6) motion is designed to screen out only cases where a complaint states a claim based upon a wrong for which there is clearly no remedy, or a claim

which the Plaintiff is without right or power to assert and for which no relief could possibly be granted. **Port Authority of New York and New Jersey v. Arcadian Corp., 189 F.3d 305, 312 (3d Cir. 1999) (*citations omitted*).**


III.   **ARGUMENT**

   A.   **Plaintiffs' Claims Are Not Barred By Absolute Privilege**

   Paragraph 18 of the Motion to Dismiss filed by Defendant E.S. cites **Binder v. Triangle Publications, Inc.**, 275 A.2d 53 (Pa. 1971) as follows:

> "All communications pertinent to any stage of a judicial proceeding are accorded an absolute privilege which cannot be destroyed by abuse.  Thus, statements by a party [or] a witness, …cannot be the basis of a defamation action."

   Defendant deceptively omitted the end of the second sentence of the quote and did not indicate that words were omitted through the use of ellipses, because the words she chose to omit contravene her position.  The correct quote is:

> "Thus, statements by a party, a witness, counsel, or a judge cannot be the basis of a defamation action whether they occur in the pleadings or in open court."

The **Binder** court continued that the absolute privilege does not apply to newspaper accounts of judicial proceedings, because policies including encouraging witnesses to provide complete and unintimidated testimony in court do not apply to news articles. However, newspapers possess a qualified privilege to make a fair and accurate report of court proceedings.

   The brief of E.S. cites **Pawlowski v. Smorto**, 588 A.2d 36 (Pa. Super. 1991) in support of her position, but fails to note that the **Pawlowski** court opined that the absolute judicial privilege applies to statements "made solely to law enforcement officials for the

purpose of initiating criminal charges".   Defendant conveniently ignores footnote 3 of **Pawlowski**, where the court opined that even an absolute privilege may be lost through publication of the defamatory material to unauthorized persons, citing **Agriss v. Roadway Express, Inc.**, 483 A.2d 456 (Pa. Super. 1984), where the court noted that the privilege might be lost if defamatory statements are published to unauthorized parties:

> "It is a question of law whether privilege applies in a given case, but a question of fact for the jury whether a privilege has been abused."

E.S. also relies upon **Richmond v. McHale**, 35 A.3d 779 (Pa. Super. 2012), which is inapposite because it involved allegedly defamatory comments made during a discussion regarding discovery in an underlying federal action.

**Richmond** cites **Post v. Mandel**, 507 A.2d 351 (Pa. 1986), where the Pennsylvania Supreme Court held that absolute privilege did not apply to a letter accusing opposing counsel of improper trial tactics, because the letter was published to individuals who had no direct interest in any future proceedings.   The Court held that the "privilege" is not a license for extra-judicial defamation, and there is an unnecessary potential for abuse if letters of the sort written in that case are published with impunity.   The Pennsylvania Supreme Court held that privilege did not apply to the alleged defamatory letter because it had been forwarded to the trial court judge and to the attorney's client in the underlying matter, who would have had no direct interest in the defamation proceedings.

Defendant E.S. cites **Schanne v. Addis**, 121 A.3d 942 (Pa. 2015) in support of her position, but fails to recognize that **Schanne** is fatal to her allegation of absolute privilege.  Schanne taught physics at Lower Merion High School (my *alma mater*), where

Addis had been his student from 2001 to 2003.  In November 2010, Addis spoke to O'Bannon, a friend who was employed by Lower Merion High School, as a friend rather than as an agent of the school.  Addis told O'Bannon that she and Schanne had been involved in an inappropriate physical relationship while she was still a student.

The **Schanne** court cited **Bochatto v. Gibson**, 860 A.2d 67 (Pa. 2004), where it held that republication of a complaint to the media was not privileged, as it was an extrajudicial act that occurred outside the regular course of the proceedings and lacked relevancy to the proceedings.  Giving privileged status to republication would not advance the privilege's underlying policy aims.

The **Schanne** court cited the Restatement (2d) of Torts §588 as well as **Cardtoons, L.C. v. Major League Baseball Players Association**, 335 F.3d 1161 (10th Cir. 2003), for the conclusion that the privilege attaches "as long as the speaker…has an actual subjective good faith belief that litigation is seriously contemplated".  The **Schanne** court concluded that judicial privilege does not apply to an allegation made by an adult before commencement of any quasi-judicial proceeding and without an intent that it lead to a quasi-judicial proceeding.  The Pennsylvania Supreme Court did not address whether the privilege should pertain to school children reporting misconduct by school employees while they are enrolled, because they are in a substantially weaker position than adults in terms of their ability to protect themselves from unjust treatment at the hands of school employees.  That caveat does not apply to this case, where the defendants falsely accused a fellow student of sexual assault.

Paragraph 19 of the Complaint alleges that Defendant K.S. was overheard telling other students that she had been sexually assaulted by T.F. on October 3, 2017, and that

she repeated those false claims to Seneca Valley Intermediate High School Guidance Counselor and an employee of the Butler County Alliance for Children.  Defendants complain that the "other students" are not identified by name. If Defendants published their false allegations via the public address system at Heinz Field during a Steelers game would Plaintiffs' Complaint be required to identify by name each person hearing the false allegations? The recipients of the defamatory communications are sufficiently identified in the Complaint to permit the parties to conduct discovery regarding their identities.

Paragraph 23 pleads that students overheard K.S. preparing C.S. for a false statement that T.F. had sexually assaulted her and that C.S., E.S. and H.R. repeated their lies to other students.  C.S. published her false allegations to K.S. and a guidance counselor, as well as a representative of the Butler County Alliance for Children.

Despite its name, the Butler County Alliance for Children is not a government entity.  Its website, ButlerCountyCAC.org, indicates that it "is an independent, 501c(3) non-profit organization located within Butler County, Pennsylvania.  It is arguable whether the Defendants' disclosures to the Butler County Alliance for Children and the school guidance counselor constitute discussions within the regular course of judicial proceedings to which judicial privilege attaches.  However, as there is no allegation that Defendants intended their false allegations to lead to a quasi-judicial or judicial proceeding, privilege does not apply.

Defendants contend that absolute privilege applies because the mean girls' false reports of sexual assault were made to a mandatory reporter (a school guidance counselor and representatives of the Butler County Alliance for Children) under the Child Protective Services law, 23 Pa.C.S. §6301 et seq.  While 23 Pa.C.S. §6318 immunizes

from liability those who in good faith report suspected child abuse for the purpose of prosecution, the statute does not immunize those who make false reports to mandated reporters who, pursuant to 42 Pa. C.S. §6311 include librarians, foster parents and other family members.  Thus, while communications to government officials who are charged with investigating such allegations would be protected by absolute privilege, there is nothing in the statute or common law to indicate that the privilege applies to false reports made to mandatory reporters.

Paragraph 27 provides that C.S., E.S. and H.R. published their false allegations amongst each other, conspiring about their lies in the presence of fellow student A.K. on May 30, 2018.  It is totally clear that the privilege does not apply to defamatory statements shared between the alleged co-conspirators and with other students.  Accordingly, the Defendants' claim of absolute privilege fails as a matter of law.  The individuals to whom the statements were published were identified as students, and that identification is sufficient to argue that these individuals actually exist, in support of a defamation claim, pursuant to **Moses v. McWilliams**, 549 A.2d 950 (Pa. Super. 1988).

Defendants assert that the Defendants' lies to school personnel are covered by absolute privilege because they are mandatory reporters, but Defendants cite no case law in support of that contention.  Merely because an individual is required to disclose alleged inappropriate conduct does not make the disclosure preliminary to a proposed criminal prosecution, particularly in this case where there is no indication that Defendants intended to initiate criminal prosecution through their false allegations.  However, since the Defendants published the defamatory communications among each other, and other students, the court need not address that issue.

E.S. contends that the Complaint does not plead that she made any statements which could be considered to be defamatory. However, the Complaint clearly pleads at Paragraphs 23 and 27 that E.S. defamed T.F. by claiming that he entered the Seaman residence uninvited, prior committing the sexual assault referenced in Paragraph 1 of the Complaint. Claiming that an individual entered a residence without permission prior to committing a sexual assault is a defamatory communication. The lies of E.S. also served to support the lies of C.S. and H.R., forming a tripod of lies: false, defamatory statements by three "mean girls" upon which the prosecution of T.F. was based.

Plaintiffs would be remiss in failing to note that E.S., who complains that Plaintiffs did not identify the recipients of her defamatory communications by name is also the individual who has attempted to intimidate witnesses to whom those defamatory communications were published from coming forward: "snitches get stitches" (refer to Plaintiffs' Brief in Opposition to Defendants' Rule 12(f) Motions). Although the unclean hands doctrine is based in equity, Plaintiffs contend that Defendants' egregious conduct prohibits the Defendants from complaining about the alleged lack of specificity in the Complaint. **Gaudiosi v. Mellon**, 269 F.2d 873 (3d Cir. 1980); **Shapiro v. Shapiro**, 204 A.2d 266 (Pa. 1964).

Finally, Defendants contend that absolute privilege applies to all counts of the Complaint, but cite no case law in support of that proposition because there is none. The doctrine of absolute privilege applies only to defamation.

### B.      Negligence Is Pleaded Properly

Defendant Megan Villegas argues that Defendants owed no duty to the Plaintiffs. The Pennsylvania Supreme Court addressed the existence of a legal duty in **Althaus v. Cohen**, 756 A.2d 1166 (Pa. 2000).   The determination of whether a duty exists in a particular case involves the weighing of several discrete factors which include:

        1.      The relationship between the parties;

        2.      The social utility of the actors' conduct;

        3.      The nature of the risk imposed; and

        4.      See ability of the harm incurred; the consequences of imposing a duty upon the actor; and

        5.      The overall public interest in the proposed solution.

"Thus, the legal concept of duty of care is necessarily rooted in often amorphous public policy considerations, which may include our perception of history, morals, justice and society".  **Althaus**, *supra.*

Balancing the risk, foreseeability and likelihood of injury against the social utility of the Defendants' conduct, the consequences of imposing a duty upon the mean girls, and the consequences of placing that burden, along with our perception of history, morals, justice and society, yields the ineluctable conclusion that the mean girls owed a duty of care to the minor Plaintiff and his parents.

Megan Villegas also claims that the negligence claims should be dismissed as duplicative of the defamation claim, citing **Shadle v. Nexstar Broadcasting Group, Inc.**, 2014 WL 3590003 (M.D. Pa. 2014).   However, **Shadle** fails to follow the law of Pennsylvania which permits a private figure Plaintiff to proceed with claims of negligence (the defamatory matter was published negligently) as well as defamation (the defamatory

matter was published maliciously), as established in **American Future Systems, Inc. v. Better Business Bureau of Eastern Pennsylvania**, 923 A.2d 389 (Pa. 2007). Accordingly, Plaintiff may proceed with both claims at the current time, and the court may revisit this issue at the summary judgment stage to determine whether facts exist indicating that the Defendants' false statements were malicious or negligent or both.

Defendant C.S. contends that Plaintiffs' negligence claims must fail because a lie must be intentional, and an individual cannot negligently fail to tell the truth.  However, the Complaint does not plead that Defendants intended the harm which Plaintiff suffered (including but not limited to prosecution and deprivation of his liberty).  Hence, a jury may conclude that the conduct of the mean girls was negligent (proximate causation of harm reasonably anticipated to occur) , rather than intentional (proximate causation of the harm intended), if the jurors conclude that a result occurred which the mean girls did not intend.


### C.    Parental Negligence Is A Viable Claim Under Althaus

Defendants George and Pam Villegas, at pages 4-5 of their Brief (Document Number 48) falsely attribute the following to the Pennsylvania Superior Court in **Maxwell v. Keas**, 639 A.2d 1215 (Pa. Super. 1994): "Parents are under a duty to exercise reasonable care to control their minor child, but this duty ends when the child becomes an adult…."  George and Pam Villegas used ellipses in an attempt to mislead this Court by intentionally omitting the words "and that happens in Michigan at age 18", because the Superior Court was quoting a Michigan Appellate Court opinion, rather than establishing Pennsylvania law.  The Superior Court, quoting a non-precedential Michigan Appellate Court opinion, is not the law of Pennsylvania, contrary to Defendants' desire.

Contrary to the Villegas' position, Pennsylvania law is not settled as to whether parents may be liable for the conduct of their adult children, if their negligence enabled the child's actions, pursuant to **Donegal Mutual Ins. Co. v. Baumhammers**, 938 A.2d 286 (Pa. 2007).  **Baumhammers** was an insurance coverage case, where the Supreme Court held that Donegal was required to defend Baumhammers' parents for negligently supervising an adult child -- failing to take possession of his gun and/or alert law enforcement authorities or mental health care providers about his dangerous propensities.  Late Chief Justice Cappy wrote a concurring and dissenting opinion in **Baumhammers**, noting that the opinion addressed only whether Donegal must provide a defense to the Baumhammers, not whether the Baumhammers were legally liable for the claims made against them.  He noted that the consideration of liability of the Baumhammers for the actions of their adult child would be reserved for a later date and would be based upon an analysis of the **Althaus** factors, *supra*.  The Pennsylvania Supreme Court has not issued a subsequent opinion on this issue.  As noted above, consideration of the **Althaus** factors supports imposition of liability on adult parents in this case.

The Brief of George and Pam Villegas admits, at page 6, that parents have a duty to exercise reasonable care to control a minor child.

Defendants correctly note that the Complaint does not explicitly plead that the parent Defendants knew or had reason to know that their children were engaging in tortious conduct, as required by **Dorley v. South Fayette Township School District**, 129 F. Supp. 3d 220 (W.D. Pa. 2015, J. Hornak). Plaintiffs believe that actual and constructive notice is implied in the Complaint (and the Complaint can be easily amended

if the court believes notice should be specifically pleaded).  It appears that Defendants contend that they are unavoidably ignorant of their child's misconduct, because they turned a blind eye to spurious allegations of sexual assault.  Hence, while David and Christy Sherk correctly note that the Complaint pleads that Mr. and Mrs. Sherk did not learn of the (false) sexual assault allegations until after K.S. reported them to a guidance counselor, this does not obviate the duty of a parent to ask a minor child whether serious sexual assault allegations are valid.  Plaintiffs contend that the **Althaus** factors place a duty upon a parent in such a situation to determine the veracity of a minor child's sexual assault claims.

Judge Hornak considered parental negligence in **Dorley**, *supra.*  The court applied the Restatement (2nd) of Torts §316 to a claim of parental negligence, citing the Pennsylvania Supreme Court opinion in **K.H. v. J.R.**, 826 A.2d 863 (Pa. 2003), where it opined that "Although a parent/child relationship by itself is insufficient to render the parents liable for the tortious acts of their children, liability may attach where the negligence of the parents makes the injury possible."  The Restatement provides that a parent may be liable for the tortious conduct of a minor child when the parent:

> a.  Knows or had reason to know that the parent has the ability to control the child; and
>
> b.  Knows or should know of the necessity and opportunity for exercising such control.

Count II of the Complaint, Parental Negligence, does not plead notice of the ability to control a child and of the necessity and opportunity to exercise control, because Plaintiffs do not believe that such pleading is necessary. The Complaint alleges conduct of the minor Defendants over a period of days and months.  A non-negligent parent cannot

wear blinders, fail to teach their children to refrain from making false criminal sexual assault allegations, and fail to know when their children are making such false allegations. Since the Complaint alleges that the parents failed to do anything to instruct, supervise their children or inquire about the false allegations, Plaintiffs do not believe it is necessary to plead notice of the ability, necessity and opportunity to exercise control.  Nevertheless, the Complaint may be amended if the Court deems it appropriate.

Defendants David and Christine Seaman cite **J.H. ex rel. Hoffman v. Pellak**, 764 A.2d 64 (Pa. Super. 2000), in support of the proposition that parents are not vicariously liable for their children.  Defendants fail to recognize that **Hoffman** deals solely with an intentional tort, and in that situation, a parent has a duty to exercise reasonable care to control a child likely to commit an intentional tort.  Plaintiffs contend that all "mean girls" (not just those in this case) are likely to engage in defamatory communications, and their parents are liable in negligence for failing to control their child or otherwise intervene.

David and Christine Seaman correctly note that Pennsylvania does not extend social host liability to situations where a minor is consuming alcohol on the adult's property unless the adult planned the event or purchased, supplied or served the alcohol. Defendants fail to comprehend that Plaintiffs are not pursuing a claim for social host liability.  Rather, the consumption of alcohol by the minors (as well as their attempts to purchase marijuana) is pleaded as indicative of the general poor supervision by the Seamans over the minors who congregated at their residence.

"Although a parent/child relationship by itself is insufficient to render the parents liable for the tortious acts of their children, liability may attach where the negligence of the parents makes the injury possible."  **K.H. v. J.R.**, 826 A.2d 863 (Pa. 2003).  Accordingly,

while Plaintiffs agree that the parents are not vicariously liable for the negligence of their children, liability attaches because the negligence of the parents contributed to cause the Plaintiffs' injuries and damages.

### D.    Defendants Engaged In An Actionable Civil Conspiracy

A civil conspiracy is a combination of two or more persons to do an unlawful or criminal act or to do a lawful act by unlawful means or for an unlawful purpose.   A conspiracy becomes actionable when some overt act is done in pursuit of the common purpose or design held by the conspirators, and actual legal damage results.  **Baker v. Rangos**, 324 A.2d 498 (Pa. Super. 1974).  The complaint pleads that there were two separate conspiracies to falsely accuse T.F. of sexual assault, and that he suffered damages as a result of both conspiracies.  While the Villegas Defendants claim that Plaintiffs are "recasting" their defamation claim as civil conspiracy, that contention fails because the concerted actions of multiple individuals is alleged to have caused harm to the Plaintiffs.

### E.    Defamation Is Properly Pleaded

Defendant Megan Villegas cites **Evans v. Philadelphia Newspapers, Inc.**, 601 A.2d 330 (Pa. Super. 1991) in support of the proposition that Plaintiffs may not circumvent the one-year statute of limitations for defamation by labeling it tortious interference with a contract.  While Plaintiffs agree that the statute of limitations for defamation against Megan Villegas passed prior to the Complaint being filed, all other counts of the Complaint against her are appropriate under the law, and are not barred by the statute of limitations,

nor do they constitute an attempt to recast defamation as a different cause of action with a longer statute of limitations.  Note that this suit was filed on October 1, 2018, prior to the expiration of the defamation statute of limitations for K.S. (October 3, 2018), and prior to the expiration of the statute of limitations for the other mean girls (March 26, 2019).

While Defendant K.S. complains that Plaintiffs do not identify the "nature and substance" of her conversation alleged in Paragraph 23 of the Complaint when she prepared C.S. to make a false statement, the substance of the planning is not germane to the cause of action.  Rather, it is the substance of the defamatory communication, the false allegation of sexual assault, that is specifically and appropriately pleaded.

As noted previously, contrary to Defendants' assertion, absolute privilege does not bar Plaintiffs' defamation claims, and absolute privilege does not apply to any other count of the Complaint.


### F.   Malicious Prosecution Is A Valid Cause Of Action

Defendant E.S. claims that she cannot be liable for malicious prosecution because she did not institute proceedings against the Plaintiff.  Interestingly, she contends that reporting a matter to a mandatory reporter does not constitute instituting proceedings, which is in direct conflict with her argument that reporting a matter to a mandatory reporter is entitled to absolute immunity because it is intended to institute proceedings. Pennsylvania S.S.J.I. 17.60 provides, in pertinent part:

> "A person who causes a criminal proceeding to be initiated [or continued] against another, resulting in his or her arrest or a seizure of his or her property, is responsible for the harm resulting from the initiation or continuation of such proceeding, if it was initiated [or continued] with malice and without

probable cause, and the proceeding terminated in favor of the plaintiff."

Plaintiffs contend that E.S. was one important component of the tripod of lies constructed by E.S., C.S., and H.R. (with the assistance of K.S.) causing the criminal proceedings against T.F. to be continued, and resulting in his arrest.

While Defendant K.S. contends that she did not institute proceedings against T.F., that is incorrect.  T.F. entered into a consent decree following prosecution based upon the false allegations of sexual assault made by K.S.  While K.S. contends that entering into the consent decree somehow constitutes an admission of guilt by T.F., the consent decree, by its very terms, indicates that T.F. made no such admission.

### G.   Defendants Invaded Plaintiff's Privacy

Defendant E.S. contends that absolute privilege bars Plaintiffs' claims of invasion of privacy but cites no case law in support of that contention, because there is none.

E.S. also contends that Plaintiff has not pleaded claims for invasion of privacy based upon intrusion upon seclusion and false light.

One who gives publicity to a matter concerning another person that places that other person before the public in a false light is responsible to that person for all harm suffered as a result of this publicity if:

    a.    The false light in which the person was placed would be highly offensive to a reasonable person; and

    b.    The person giving the publicity had knowledge of or acted in reckless disregard as to the falsity of the matter.  And even permitting an individual to publish misleading portions of the truth "is the equivalent of sanctioning the promulgation of falsehoods under the guise of the First Amendment."

**Larsen v. Philadelphia Newspapers, Inc.**, 543 A.2d 1181 (Pa. Super. 1988); *See*, **Hussein v. Universal Development Management, et al.**, W.D.Pa. 01-2381, where I obtained a record verdict of $850,000 compensatory damages and $1.6 million punitive damages in a civil rights and false light invasion of privacy case arising from false allegations of terrorism lodged against a physician born in Egypt by his apartment complex manager in Western Pennsylvania on 9/11.

E.S. and the other mean girls concocted lies to support the false claims of sexual assault raised against T.F.  False light invasion of privacy is properly pleaded.

### H.      Intentional Infliction Of Emotion Distress Is Pleaded Properly

A person who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for physical and psychological harm resulting from that emotional distress.  **Papieves v. Kelly**, 263 A.2d 118 (Pa. 1970).  The complaint properly pleads a claim for intentional infliction of emotional distress.  The Villegas Defendants do not contest this count of the Complaint, but the other Defendants contend that the cause of action is barred by absolute privilege.  However, Defendants cite no case law in support of that contention.

### I.      Abuse of Process Is A Viable Cause Of Action

A person who uses criminal legal process against another, resulting in arrest or seizure of his property, is responsible to the person against whom the process was used if the process was used primarily to accomplish a purpose for which it was not designed.

Unlike an action for a malicious prosecution, lack of probable cause is not an element of an action for abuse of process.  *See*, Subcommittee Note to S.S.J.I. 17.80; **Publix Drug Co. v. Breyer Ice Cream Co.**, 32 A.2d 413 (Pa. 1943); **Morphy v. Shipley**, 41 A.2d 671 (Pa. 1945).  Defendant E.S. claims absolute privilege without citing case law supporting that claim.  She also claims that she did not cause process to be issued against the minor Plaintiff, but fails to recognize that her statement formed the tripod of lies supporting prosecution of T.F.  Defendant K.S. claims that she did not cause process to be initiated, but as noted previously, that argument flies in the face of her contention that statements to a mandatory reporter caused legal process to be initiated, and also ignores that her statements were used to initiate prosecution of the minor Plaintiff.

Abuse of process is defined as the use of legal process against another primarily to accomplish a purpose for which it was not designed.  To establish a claim for abuse of process, it must be shown that the Defendant:

1.      Used legal process against the Plaintiff;

2.      Primarily to accomplish a purpose for which the process was not designed, and

3.      Harm has been caused to the Plaintiff.

**Shiner v. Moriarty**, 706 A.2d 1228 (Pa. Super. 1998).

The Complaint properly alleges that the mean girls abused criminal process for an improper purpose, and the Plaintiffs suffered harm.  Defendants' motions lack merit.

### J.      Injurious Falsehood (Disparagement) is Pleaded Properly

One who publishes an untrue statement or opinion that she should know will likely result in financial harm to another because of the actions of a third person relying on the statement is responsible for the monetary loss resulting to the other from such harm if:

    a.    The maker of the statement is motivated by ill will toward to other; or

    b.    The maker intends to interfere with the interests of another in a way in which she is not privileged to do; or

    c.    The maker of the statement knows that it is untrue or does not have the basis for knowledge or belief of its truth as indicated by the statement.

**Menefee v. Columbia Broadcasting System, Inc.**, 329 A.2d 216 (Pa. 1974). Defendants are correct that injurious falsehood consists of the publication of a disparaging statement concerning the business of another.  The incident involving Megan Villegas and K.S. at the Zelienople pool is subject to a claim of injurious falsehood.  While the statute of limitations has expired with respect to Megan Villegas, the cause of action is valid as to K.S. and to the other mean girls involved in the second incident of false sexual assault allegations.

### K.      Fraudulent Misrepresentation Should Be Stricken

Defendant E.S. contends that fraudulent misrepresentation is a commercial tort not applicable to this case, although admitting in footnote 6 that Section 557A of the Restatement (2nd) of Torts provides for recovery when a fraudulent misrepresentation causes physical harm based upon reliance upon that misrepresentation.  Upon review of the case law cited by Defendant, Plaintiffs agree that Count IX should be dismissed.

## IV.   <u>CONCLUSION</u>

WHEREFORE, the Plaintiffs respectfully request that Defendants' Rule 12(b)(6) Motions be denied in their entirety, except as noted herein.

Respectfully submitted,

Shenderovich, Shenderovich & Fishman, P.C.

By: /s/ Craig L. Fishman
   Craig L. Fishman, Esquire
   PA I.D. #58753

   429 Fourth Avenue
   1100 Law & Finance Building
   Pittsburgh, PA  15219

   (412) 391-7610 – telephone
   (412) 391-1126 – facsimile
   clf@ssf-lawfirm.com

   Attorney for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

All parties represented by counsel have been served by the Court's CM/ECF system.  David Reina and Lynn Reina are unrepresented, and have been served with this document via email at the email addresses listed on their Waiver of the Service of Summons forms as follows:

Lynn Reina (shields148@hotmail.com)

David Reina (pghsteelers74@hotmail.com)

  /s/ Craig L. Fishman
Craig L. Fishman, Esquire
Attorney for Plaintiffs