## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHAEL FLOOD, JR. and ALECIA
FLOOD, individually and as Parents and
Natural Guardians of T.F., a minor,

          Plaintiffs,

          v.

DAVID and CHRISTY SHERK, individually
and as Parents and Natural Guardians of K.S.,
a minor; DAVID and CHRISTINE SEAMAN,
individually and as Parents and Natural
Guardians of C.S., a minor; CRIS and
KIMBERLY SALANCY, individually and as
Parents and Natural Guardians of E.S., a
Minor; DAVID and LYNN REINA,
Individually and as Parents and Natural
Guardians of H.R., a minor and SENECA
VALLEY SCHOOL DISTRICT,

          Defendants.

CASE No.: 2:18-cv-01310-MRH

HONORABLE MARK R. HORNAK

## ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' COMPLAINT and COUNTERCLAIM

AND NOW, come Defendants David and Christy Sherk individually and as parents and

Natural Guardians of K.S., a minor (hereinafter "the Sherks"), by and through their undersigned

counsel, Gilliland Vanasdale Sinatra Law Office, LLC, and file the following Answer and Counter

Claim Complaint against Plaintiffs Michael Flood, Jr. and Alecia Flood, Individually and as parents

and Natural Guardians of T.F., a minor, and in support thereof, aver and submit as follows:

### ANSWER:

### 1 – 51 ALLEGATIONS

1.     Denied.  By way of further response, K.S. was sexually assaulted by T.F. on July 19,

2017.  As a result of the assault, T.F. was charged with one count of Indecent Assault, two counts of

Harassment and one count of Disorderly Conduct. He and his parents willingly entered into a consent decree with the Butler County District Attorney's Office and T.F. served a term of supervision with the Butler County juvenile probation department. It was only once he completed the terms and conditions of his supervision that the case against him was closed. K.S. never recanted her accusations against T.F. and never committed or admitted to any misconduct. After reasonable investigation, the Sherks are without knowledge or information sufficient to form a belief as to the remaining averments in this paragraph and therefore deny the same and demand strict proof thereof.

2. Admitted.

3. Admitted.

4. Admitted.

5. Admitted.

6. Admitted.

7. Admitted.

8. Admitted.

9. This paragraph contains conclusions of law to which no response is required. To the extent that this paragraph contains averments of fact, the Sherks deny the same and demand strict proof thereof.

10. This paragraph contains conclusions of law to which no response is required. To the extent that this paragraph contains averments of fact, the Sherks deny the same and demand strict proof thereof.

11. This paragraph contains conclusions of law to which no response is required. To the extent that this paragraph contains averments of fact, the Sherks deny the same and demand strict proof thereof.

12. Admitted.

13.     Admitted in part and denied in part. It is admitted that during the summer of 2017 T.F. was employed as a lifeguard at the Zelienople Community Pool in Butler County, PA, and that K.S. also worked at the pool. The remaining averments of fact are denied. By way of further response, on or about July 19, 2017, K.S. was working alone at the concession stand at the Zelienople Community Pool. The garage doors that open the concession stand to the public were closed and K.S. was cleaning up for the day. T.F. entered the concession stand through an employee entrance, even though lifeguards were not permitted in that area. T.F. sexually assaulted K.S. while she was alone in the concession stand. He briefly left the concession stand and returned ten or fifteen minutes later and sexually assaulted K.S. again. The next day, K.S. reported the assault to T.F.'s immediate supervisor, Megan Villegas. Upon information and belief, Megan Villegas reported the incident to Brandon Coneby. Upon information and belief, T.F. was subsequently suspended from his position at the pool while the matter was under investigation. He was later seen by Megan Villegas in the pool with a group of young girls, in violation of his suspension. His employment was terminated for insubordination.

14.     Admitted in part and denied in part. Upon information and belief, Plaintiff Alecia Flood reported to Erin Mazer, Assistant Principal at Seneca Valley Intermediate High School that K.S. "would do anything to get T.F. expelled." The remaining allegations are denied. By way of further response, prior to October 2, 2017, K.S. told a classmate that she had been sexually assaulted by T.F. and that she wished he would be expelled from school. Upon information and belief, that classmate told T.F. about the conversation, who reported it to Alecia Flood. Alecia Flood and Michael Flood then reported to Seneca Valley School District that K.S. threatened to "do anything to get [T.F.] expelled."

15.     Admitted in part and denied in part. It is admitted that K.S. was called to the guidance counselor's office and that the guidance counselor subsequently reported T.F. to Childline for sexual assault, and that K.S. was interviewed by Sue Counts from the Butler County Alliance for

Children on October 4, 2017.  The remaining averments of fact are denied.  By way of further

response, K.S. was summoned to the guidance counselor's office at the demand of Plaintiff Alecia

Flood, who reported that K.S. told a classmate that she wanted T.F. to be expelled.  The guidance

counselor asked K.S. if she had an issue with T.F.  K.S. then told the guidance counselor about the

sexual assault at the Zelienople Community Pool on July 19, 2017.  The guidance counselor, who is

a mandated reporter, reported the incident to Childline.  K.S. was interviewed by Sue Counts on

October 4, 2017, where she gave a detailed and consistent account of the sexual assault in a

videoptaped interview.  K.S.'s version of events never changed.  At the end of the interview, Sue

Counts asked K.S. if she had any further contact with T.F.  K.S. answered that she had a class with

him at school and that their seats were fairly close.  Describing how daily proximity to T.F. was

upsetting to her, K.S. stated, "I just don't like to hear him talk.  I don't like to look at him.  I just

don't like him."

16.    Admitted.

17.    It is admitted that K.S. told Seneca Valley personnel that she was uncomfortable

sharing a class with T.F. because he sexually assaulted her.  The Sherks are without knowledge or

information sufficient to admit or deny the remaining averments in this paragraph and therefore

deny the same and demand strict proof thereof.

18.    Admitted.

19.    The Sherks are without knowledge or information sufficient to admit or deny the

remaining averments in this paragraph and therefore deny the same and demand strict proof thereof.

By way of further response, K.S. was not included in any invitation to "hang out" at the home of

C.S. and was not present at the home of C.S. on March 23, 2018.

20.    It is admitted that K.S. and C.S. attend Seneca Valley Intermediate High School

together, that K.S. walked C.S. to the guidance counselor on March 26, 2018, and that C.S., E.S.,

and H.R. were interviewed by the Butler County Alliance for Children.  It is denied that K.S.

prepared C.S. for a false statement.  The Sherks are without knowledge or information sufficient to admit or deny the remaining averments in this paragraph and therefore deny the same and demand strict proof thereof.  By way of further response, K.S. never accused T.F. of sexually assaulting C.S., was not present during the alleged incident, and made no statement to the authorities regarding the alleged sexual assault on C.S.

21.     Upon information and belief, admitted.

22.     The Sherks are without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph and therefore deny the same and demand strict proof thereof.

23.     The Sherks are without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph and therefore deny the same and demand strict proof thereof.

24.     The Sherks are without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph and therefore deny the same and demand strict proof thereof.

25.     The Sherks are without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph and therefore deny the same and demand strict proof thereof.

26.     The Sherks are without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph and therefore deny the same and demand strict proof thereof.

27.     The Sherks are without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph and therefore deny the same and demand strict proof thereof.

28.     The Sherks are without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph and therefore deny the same and demand strict proof thereof.

29.     Admitted.

30.     The Sherks are without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph and therefore deny the same and demand strict proof thereof.

31.     The Sherks are without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph and therefore deny the same and demand strict proof thereof.

32.     The Sherks are without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph and therefore deny the same and demand strict proof thereof.

33.     The Sherks are without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph and therefore deny the same and demand strict proof thereof.

34.     The Sherks are without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph and therefore deny the same and demand strict proof thereof.

35.     The Sherks are without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph and therefore deny the same and demand strict proof thereof.

36.     The Sherks are without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph and therefore deny the same and demand strict proof thereof.

37.     The Sherks are without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph and therefore deny the same and demand strict proof thereof.

38.     The Sherks are without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph and therefore deny the same and demand strict proof thereof.

39.     Admitted in part and denied in part.  It is admitted that the case against T.F. involving the allegations of K.S. was closed by the District Attorney's Office on August 30, 2018 and that T.F. was released from Court supervision on September 10, 2018.  By way of further response, the case against T.F. was closed and he was released from supervision only after completing all terms and conditions of supervision by the Butler County Juvenile Probation Department pursuant to a consent decree into which T.F. and his parents willingly entered.  It is denied that the allegations of K.S. were false.  The Sherks are without sufficient knowledge or information to form a belief as to averments regarding the allegations of C.S. and therefore deny the same and demand strict proof thereof.

40.     Denied.  By way of further response, K.S. did not engage in misconduct as her statements regarding the July 19, 2017 sexual assault by T.F. were truthful.  K.S. suffered academic and personal consequences as a result of T.F.'s assault.  The Sherks are without knowledge or information sufficient to for a belief as to the truth of the remaining averments in this paragraph and therefore deny the same and demand strict proof thereof.

41.     The Sherks deny that K.S. lied about the July 19, 2017 sexual assault and deny that K.S. bullied T.F.  The Sherks are without knowledge or information sufficient to form a belief as to the remaining averments in this paragraph and therefore deny the same and demand strict proof thereof.

42.     Denied.

43.     Denied.

44.     Denied.

45.     Denied.

## COUNT ONE- DEFAMATION
## PLAINTIFFS v. K.S.

46.     Paragraph 46 of the Amended Complaint is an incorporation paragraph and requires no response.

47.     Paragraph 47 contains conclusions of law to which no response is required.  To the extent this paragraph includes averments of fact, they are denied and strict proof is demanded thereof.  By way of further response, K.S. did not falsely accuse T.F. of sexual assault.  She was sexually assaulted by T.F. while at work at the Zelienople Community Pool.  She reported the incident to Megan Villegas, T.F.'s immediate supervisor.  Upon information and belief, T.F. was fired for insubordination.

48.     Paragraph 48 contains conclusions of law to which no response is required.  To the extent this paragraph contains averments of fact, they are denied and strict proof is demanded thereof.

49.     Paragraph 49 contains conclusions of law to which no response is required.  To the extent that this paragraph contains averments of fact, they are denied and strict proof is demanded thereof.

50.     Paragraph 50 contains conclusions of law to which no response is required.  To the extent this paragraph contains averments of fact, they are denied and strict proof is demanded thereof.

51.     Paragraph 51 contains conclusions of law to which no response is required.  To the extent this paragraph contains averments of fact, they are denied and strict proof is demanded thereof.

WHEREFORE, the Sherks respectfully request that judgment be entered in their favor, together with costs of suit.

## COUNT II – DEFAMATION
### Plaintiffs v. C.S., E.S., and H.R.

52.     Paragraph 52 of the Amended Complaint is an incorporation paragraph and requires no response.

53.     Paragraph 53 contains conclusions of law to which no response is required.  The Sherks are without knowledge or information sufficient to admit or deny the averments contained in Paragraph 53 of the Amended Complaint and therefore deny the same and demand strict proof thereof.

54.     Paragraph 54 contains conclusions of law to which no response is required.  To the extent that this paragraph contains averments of fact, they are denied and strict proof is demanded thereof.

55.     Paragraph 55 contains conclusions of law to which no response is required.  To the extent that this paragraph contains averments of fact, they are denied and strict proof is demanded thereof.

56.     Paragraph 56 contains conclusions of law to which no response is required.  To the extent that this paragraph contains averments of fact, they are denied and strict proof is demanded thereof.  By way of further response, K.S. denies making any false or defamatory communications.

57.     Paragraph 57 contains conclusions of law to which no response is required.  To the extent that this paragraph contains averments of fact, they are denied and strict proof is demanded thereof.

58.     Paragraph 58 contains conclusions of law to which no response is required.  To the extent that this paragraph contains averments of fact, they are denied and strict proof is demanded thereof.

59.     Paragraph 59 contains conclusions of law to which no response is required.  To the extent that this paragraph contains averments of fact, they are denied and strict proof is demanded thereof.

WHEREFORE, the Sherks respectfully request that judgment be entered in their favor, together with costs of suit.

### COUNT III – VIOLATION FO THE 14TH AMENDMENT OF THE CONSTITUTION BROUGHT PURSUANT TO 42 U.S.C. §1983 PLAINTIFFS V. SENECA VALLEY SCHOOL DISTRICT

60.     Paragraph 60 of the Amended Complaint is a paragraph of incorporation to which no response is required.

61.     Admitted.

62.     It is denied that K.S. engaged in any conduct that violated the Seneca Valley Sexual Harassment, Unlawful Harassment and/or Bullying Policies.  The Sherks are without knowledge or information sufficient to admit or deny the averments of fact related to the conduct of C.S., E.S., and H.R. and therefore deny the same and demand strict proof thereof.

63.     Paragraph 63 of the amended complaint contains conclusions of law to which no response is required.  To the extent that this paragraph contains averments of fact, they are denied and strict proof is demanded thereof.

64.     The Sherks are without knowledge or information sufficient to admit or deny the averments of paragraph 64 and therefore deny the same and demand strict proof thereof.

65.     The Sherks are without knowledge or information sufficient to admit or deny the averments of paragraph 65 and therefore deny the same and demand strict proof thereof.

66.     The Sherks are without knowledge or information sufficient to admit or deny the averments of paragraph 66 and therefore deny the same and demand strict proof thereof.

67.     The Sherks are without knowledge or information sufficient to admit or deny the averments of paragraph 67 and therefore deny the same and demand strict proof thereof.

68.     The Sherks are without knowledge or information sufficient to admit or deny the averments of paragraph 68 and therefore deny the same and demand strict proof thereof.

69.     Paragraph 69 contains conclusions of law to which no response is required.  The Sherks are without knowledge or information sufficient to admit or deny the averments of paragraph 69 and therefore deny the same and demand strict proof thereof.

70.     It is denied that K.S. engaged in any misconduct.  The Sherks are without knowledge or information sufficient to admit or deny the remaining averments contained in paragraph 70 and therefore deny the same and demand strict proof thereof.

71.     Paragraph 71 of the Amended Complaint contains conclusions of law to which no response is required.  The Sherks are without knowledge or information sufficient to admit or deny the factual averments contained in paragraph 71 and therefore deny the same and demand strict proof thereof.

72.     Paragraph 72 of the Amended Complaint contains conclusions of law to which no response is required.  The Sherks are without knowledge or information sufficient to admit or deny the factual averments contained in paragraph 72 and therefore deny the same and demand strict proof thereof.

73.     Paragraph 73 of the Amended Complaint contains conclusions of law to which no response is required.  It is denied that there was any reason for Seneca Valley School District to investigate and discipline K.S.  The Sherks are without knowledge or information sufficient to admit or deny the remaining factual averments contained in paragraph 73 and therefore deny the same and demand strict proof thereof.

74.     Paragraph 74 contains conclusions of law to which no response is required. To the extent paragraph 74 contains averments of fact, the Sherks deny the same and demand strict proof thereof.

75.     Paragraph 75 contains conclusions of law to which no response is required. To the extent paragraph 75 contains averments of fact, the Sherks deny the same and demand strict proof thereof.

76.     Paragraph 76 contains conclusions of law to which no response is required. To the extent paragraph 76 contains averments of fact, the Sherks deny the same and demand strict proof thereof.

WHEREFORE, The Sherks respectfully request that judgment be entered in their favor, together with costs of suit.

## FURTHER ANSWER

77.     The Sherks deny each and every allegation in the Plaintiffs' Complaint, whether express or implied, that Sherks have not unequivocally and expressly admitted in their Answer.

## FIRST AFFIRMATIVE DEFENSE

The Court lacks subject matter jurisdiction based upon the Rooker-Feldman doctrine because the Consent Decree bars the Plaintiffs' claims for defamation against K.S.

## SECOND AFFIRMATIVE DEFENSE

The damage to one's reputation is *not by itself* sufficient to invoke the procedural protection of the due process clause. *Paul v. Davis*, 424 U.S. 693, 701, 96 S. Ct. 1155, 1161, (1976).   The Plaintiffs' Complaint fails to pass the "stigma plus" test of *Paul v. Davis*, at pp. 701-702.   Thus, subject matter jurisdiction is lacking on the *Paul v. Davis* standard, and the complaint therefore fails to state a claim against K.S. upon which relief can be granted.

## THIRD AFFIRMATIVE DEFENSE

To the extent discovery may reveal, the alleged damages involved in this matter were caused, in whole or in part, by the actions and/or omissions of other individuals or entities other than the Sherks and, as such, the Sherks are not liable for the claims against them or alleged damages in this matter.

### FOURTH AFFIRMATIVE DEFENSE

To the extent discovery may reveal, the Plaintiffs' claims are barred and/or limited by the defenses of estoppel and waiver.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' alleged harm was caused by T.F., who on at least three occasions engaged in inappropriate conduct of a sexual nature, which caused him to be reported three times by three separate victims and charged on each such occasion with sexual assault or harassment through acts of a sexual nature, and not by any conduct or statements of Defendant K.S.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' claims against K.S. are barred by truth and justification.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims against K.S. are barred by privilege.

### EIGHTH AFFIRMATIVE DEFENSE

The statements of K.S. which Plaintiffs claim were defamatory were all statements regarding a matter or matters of public concern which are constitutionally protected by the United States Constitution and/or Pennsylvania Constitution.

### NINTH AFFIRMATIVE DEFENSE

Plaintiffs' claims against K.S. are barred because K.S. did not act with pite ill will, malice, or actual malice and did not negligently and/or intentionally publish any false statements concerning T.F.

### TENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims against K.S. are barred by Plaintiffs' assurances given to the Office of the District Attorney of Butler County that upon cessation of the prosecution of T.F., Plaintiffs would not retaliate against his victims and the witnesses against him.

### ELEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims against K.S. are barred by the statute of limitations.

### TWELFTH AFFIRMATIVE DEFENSE

The claims for damages and/or injuries of T.F. are based upon pre-existing circumstances and/or conditions unrelated to any alleged defamatory statements by K.S.

### THIRTEENTH AFFIRMATIVE DEFENSE

The alleged damages and injuries of T.F. and/or his parents were caused solely and/or exclusively by circumstances over which K.S. had no control or responsibility.

### FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiffs fail to state claims for which the court can grant relief.

### FIFTEENTH AFFIRMATIVE DEFENSE

The Sherks reserve the right to raise such additional defenses as the continuing investigation and discovery may reveal.

WHEREFORE, the Sherks deny any and all averments of fact not expressly admitted and further deny that the Plaintiffs are entitled to the relief sought against K.S. in the First Amended Complaint.  The Sherks further demand judgment in their favor, together with costs of suit.

### DEFENDANTS, DAVID AND CHRISTY SHERK INDIVIDUALLY AND AS PARENTS AND NATURAL GUARDIANS OF K.S., A MINOR, COUNTER CLAIM COMPLAINT AGAINST  PLAINTIFFS MICHAEL FLOOD, JR. AND ALECIA FLOOD INDIVIDUALLY AND AS PARENTS AND NATURAL GUARDIANS OF T.F.,  A MINOR

AND NOW, come Defendants David and Christy Sherk individually and as parents and Natural Guardians of K.S., a Minor (hereinafter "the Sherks"), by and through their undersigned counsel, Gilliland Vanasdale Sinatra Law Office, LLC and file the following Counter Claim Complaint against Michael Flood, Jr. and Alecia Flood, Individually and as parents and Natural Guardians of T.F., a minor, and in support thereof aver and submit as follows:

## I.    THE PARTIES

1.     The Counter Claim Plaintiffs are David Sherk and Christy Sherk, adult individuals, who are the parents and natural guardians of their daughter, K.S., who currently is a minor. They reside at 419 Isabella Court, Zelienople, Butler County, Pennsylvania 16063.

2. The Counter Claim Defendants, Michael Flood, Jr. and Alecia Flood, are adult individuals, who are the parents and natural guardians of their son, T.F., who currently is a minor.  They reside at 437 East Beaver Street, Zelienople, Butler County, Pennsylvania.

## II.    JURISDICTION AND VENUE

3. The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

4. All of the events giving rise to this action occurred in Butler County, Pennsylvania, and venue is properly laid in the United States District Court for the Western District of Pennsylvania pursuant to 28 U.S.C. § 1391(b).

## III.    FACTUAL ALLEGATIONS APPLICABLE TO ALL CLAIMS

5.  At all times pertinent to this matter, Michael Flood, Jr. was employed as a teacher with the Seneca Valley School District, and T.F. and K.S. were students at Seneca Valley Intermediate High School.

6. During the summer of 2017, T.F. was employed as a lifeguard at the Zelienople Community Pool in Butler County, Pennsylvania. K.S. was also employed by the Zelienople Community Pool, where she worked at the concession stand at the pool.

7. On or about July 19, 2017, K.S. was completing her closing procedures at the concession stand and had closed both garage doors as the concession stand was closed for the day.

8.  It is the Pool Policy that lifeguards are not to be in the concession stand closed area while working.

9. A shirtless T.F. entered the closed concession stand area and started to refill his water bottle and then proceeded to squirt water on K.S. around her chest area.

10. T.F. then grabbed K.S. on and about her chest and shorts area. K.S. immediately stated "no" and proceeded to move away from T.F. until she was backed up against a wall.

11. T.F. stated to K.S., "you like it," and "when we going to hang out?" K.S. responded, "we are never going to hang out."

12. T.F. left the closed concession stand area and K.S. sent a group text to three friends that "T.F. just sexually assaulted me."

13. T.F. returned five to ten minutes later and approached K.S. again and sexually assaulted K.S. for a second time, putting his hands on her chest both inside and outside of her shirt, down her shorts, where he touched her bare buttocks, and her vaginal area outside her shorts.

14. K.S. attempted to get away from T.F. by grabbing the trash that needed to be removed and T.F. then proceeded to leave the confined closed concession stand area.

15. After T.F. left the closed concession stand area, K.S. sent another group text to her three friends, stating that T.F. sexually assaulted her again.

16. On the evening of July 19, 2017, a friend of K.S. sent a Snapchat message to T.F. stating that what he had done to K.S. was not right.

17. At approximately 9:00 pm on July 19, 2017, T.F. sent a Snapchat message to K.S. stating, "I'm sorry," following which K.S. blocked T.F. from any further contact.

18. K.S. told her sister about the sexual assault, that she was extremely confused about the situation, and that she did not want her parents to know about it.

19. On July 20, 2017, at the urging of a friend, K.S. report the two incidents of sexual assault to Megan Villegas, who is the head life guard of the Zelienople Community Pool and T.F.'s immediate supervisor.

20. K.S. told Megan Villegas that due to the sexual assaults by T.F., she did not want to work any shifts when T.F. was working as well.

21. Upon information and belief, T.F. was suspended during the investigation and told that he was no longer permitted to be around young females at the pool.

22. Upon information and belief, T.F. failed to adhere to his employment restrictions and was seen by Megan Villegas teaching young females in the pool without the required supervision in or about July of 2017.

23. Brandon Coneby, President of Aquatic Watch Inc., the company who provides lifeguards for the Zelienople Community Pool, fired T.F. from his job at the pool on or about July 26, 2017, due to his insubordination.

24. On the first day of the 2017-2018 school year at Seneca Valley Intermediate High School, K.S. was placed in a first period English class with T.F.  During lunch that day K.S. went to the office and requested to be moved out of that class.  Seneca Valley personnel failed to ask K.S. why she did not want to be in the same class as T.F.

25.  Later that same day, K.S. walked into her last period class, history, and saw that T.F. was also in the same class.

26. In fear of retaliation from T.F. and that he would discover that she had him removed from her English class earlier that day, K.S. tried her best to ignore T.F., although she could not speak or move during this class period up and until October 2, 2017 due to the distress caused by T.F.'s presence.

27. K.S. did not tell her parents about the sexual assaults and there was no criminal investigation by any law enforcement agency from July 19, 2017 through October 2, 2017.

28. Upon information and belief, on or about October 2, 2017, T.F.'s mother, Plaintiff Alecia Flood, reported to the school district that K.S. told a classmate that she did not like T.F. and she wished he would be expelled.

29. Upon information and belief, on or about October 2, 2017, T.F. failed to tell his mother, Alecia Flood, why K.S. disliked him.

30. Upon information and belief, Alecia Flood and Michael Flood met with personnel from the Zelienople Community Pool when T.F. was terminated and knew or should have known about T.F.'s sexual assault on K.S.

31. Upon information and belief, Alecia Flood and Michael Flood knew that T.F. had previously been charged with summary harassment for conduct of a sexual nature against another Seneca Valley student prior to the sexual assault on K.S.

32. That same day, Alecia Flood and Michael Flood contacted Erin Mazer, Assistant Principal at Seneca Valley Intermediate High School, about K.S.'s alleged comments to a classmate and demanded that the school address those comments.

33. On October 3, 2017, solely due to the complaint of Alecia Flood to Seneca Valley administration, K.S. was called to the office and asked if she had any issues with T.F.

34. K.S. told her guidance counsel that she was sexually assaulted by T.F. at the Zelienople Community Pool.

35. As a mandatory reporter, the guidance counselor contacted Childline to report the sexual assaults committed by T.F. on K.S. at the Zelienople Pool on July 19, 2017.

36. On October 4, 2017, K.S. was interviewed by Sue Counts, Forensic Interviewer/Coordinator at Butler County Alliance for Children, as part of the investigation. The interview was video recorded.

37. On October 8, 2017, after completing a full investigation, the Zelienople police concluded that T.F. should be charged with the following:

a. One count of 18 Pa. C.S.A. § 3126, Indecent Assault: Indecent assault. (a)(1) Offense defined.--A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or

intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and: 1) the person does so without the complainant's consent; a misdemeanor of the second degree.

b.  One count of 19 Pa. C.S.A. § 2709, Harassment: (a)(1) Offense defined.--A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person: (1) strikes, shoves, kicks or otherwise subjects the other person to physical contact, or attempts or threatens to do the same; a summary offense.

c. One Count of § 2709.  Harassment. (a)(3)  Offense defined.--A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person, the person (3) engages in a course of conduct or repeatedly commits acts which serve no legitimate purpose;

d.  One count of § 5503 Disorderly Conduct (a)(4)  Offense defined.--A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:  (4)  creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.  A misdemeanor of the 3rd degree.

(See **Exhibit A**)

38. On October 8, 2017, T.F. was charged with one count of Indecent assault, two counts of Harassment and one count of Disorderly Conduct by the Zelienople Police Department.

39. On or about October 10, 2017, Seneca Valley finally removed T.F. from K.S.'s history class due to the pending criminal charges.

40. A Petition Alleging Delinquency was filed on November 1, 2017 by the Butler County District Attorney's Office Juvenile Division at Docket # CP-10-JV-0000160-2017 (See **Exhibit B**).

Michael and Alecia Flood retained legal counsel on behalf of their son T.F. to address the four criminal charges filed against T.F.

41. Instead of proceeding to a trial, T.F., his parents, and their counsel, accepted a Consent Decree from the Butler County District Attorney's Office on January 24, 2018 to reach a final resolution of the criminal charges against T.F.

42. As part of the terms of the Consent Decree, T.F. was required to not have any contact with K.S., to follow the rules of his probation officer, and to submit to random drug tests. T.F was advised that the Delinquency Petition may be reinstated and that T.F. may be held accountable as if the Consent Decree had never been entered if there was a new petition filed against T.F. or if T.F. failed to fulfill the express terms and conditions of the Consent Decree.  (See **Exhibit C**)

43. K.S. and her parents were not advised by the Butler County District Attorney's Office of the Consent Decree and the supervision that was imposed on T.F. and believed the matter to be closed.

44. Upon information and belief, on or about March 23, 2018, T.F. was involved in another incident involving Defendant C.S. that was completely unrelated to the July 19, 2017 sexual assault of K.S..

45.     As a result of the March 23, 2018 incident, on April 9, 2018, T.F was removed from Seneca Valley Intermediate High School and taken to Keystone Education Center and on April 10, 2018 he was charged with offenses of indecent assault, forcible compulsion, criminal trespass, and simple assault involving Defendant C.S.

46. Per the terms of the original Consent Decree entered into by T.F. and his parents for the July 19, 2017 sexual assault on K.S., T.F. was to be released from the supervision of juvenile probation on July 24, 2018.

47. Due to violations of the Consent Decree and additional charges filed against T.F., the Consent Decree and probationary period was extended by the court until August 30, 2018.  (See **Exhibit D**)

48. T.F. was released from all supervision on September 10, 2018 for the charges arising from his sexual assault on K.S. only after fulfilling all of the terms of the Consent Decree.  (See **Exhibit E**)

49. K.S. never recanted her allegations against T.F. and the Butler County District Attorney's Office never determined that the charges filed against T.F. arising from his sexual assaults on K.S. on July 19, 2017, were unfounded.

50. It was only after T.F. completed the terms of his extended supervision and satisfied the terms and conditions of the Consent Decree that the Butler County District Attorney's Office moved to close the case against him on August 30, 2018.  On September 10, 2018, the court released T.F. from supervision and marked the case as CLOSED.

51. The only charges withdrawn by the Butler County District Attorney's Office were the charges related to the March 23, 2018 involving C.S.

### IV. CLAIMS FOR RELIEF

### COUNT I – ASSAULT

**DAVID and CHRISTY SHERK, individually and as Parents and Natural Guardians of K.S., a minor v. T.F., a minor**

52. Defendants/Counter Claim Plaintiffs incorporate by reference the averments contained in Paragraphs 1 through 51 inclusive of this Counter Claim Complaint, as if the same were set forth at length herein and to the extent that such averments may be deemed relevant to this cause of action.

53. On July 19, 2017 T.F. entered the confined space known as the concession stand at the Zelienople Pool with the intended purpose to sexually assault K.S.

54. After he sexually assaulted K.S., T.F left and returned 5 to 10 minutes later only to place apprehension and fear into K.S. by restricting her in the confined space of the concession stand for the sole purpose of physically touching K.S. in an offensive and sexual manner.

55. T.F., without consent from K.S., touched K.S. in a harmful manner by grabbing her chest and shorts area, both over and under her clothes.

56.     T.F.'s actions were both unwanted and uninvited and were offensive to K.S.'s reasonable sense of dignity.

57.     As a direct and proximate result of T.F.'s conduct, K.S. has suffered harm to her reputation; K.S. has suffered harassment in and out of school, including being called a liar and other derogatory terms by other students and people online and on social medial; K.S. has been harassed and bullied at school and school events; K.S. has suffered psychological harm requiring medical treatment, harm to her standing in the community, and other damages and injuries which may become apparent during the pendency of this matter.

WHEREFORE, Counter Claim Plaintiffs respectfully requests that judgment be entered in their favor and against the Plaintiffs/Counter-Claim Defendants in excess of the requisite amount for this Court to exercise jurisdiction, plus costs of suit and any other relief determined to be appropriate by the Court.

### COUNT II-BATTERY

**DAVID and CHRISTY SHERK, individually and as Parents and Natural Guardians of K.S., a minor v. T.F., a minor**

58.     Defendants/Counter Claim Plaintiffs incorporates by reference the averments contained in Paragraphs 1 through 57 inclusive of this Counter Claim Complaint, as if the same were set forth at length herein and to the extent that such averments may be deemed relevant to this cause of action.

59.     On July 19, 2017 T.F. entered the confined space known as the concession stand on two separate occasions and without consent offensively touched K.S. in a sexual manner.

60.     T.F., without consent from K.S., touched K.S. in a harmful manner by grabbing her chest and shorts area, both over and under her clothes.

61.     As a direct and proximate result of T.F.'s conduct, K.S. has suffered harm to her reputation; K.S. has suffered harassment in and out of school, including being called a liar and other

derogatory terms by other students and people online and on social medial; has been harassed and

bullied at school and school events; suffered psychological harm requiring medical treatment,

harm to her standing in the community and other damages and injuries which may become apparent

during the pendency of this matter.

62.     The conduct of the Counter Claim Defendant was willful and wanton, in reckless

disregard to the rights of the Counter Claim Plaintiffs, such that an award of punitive damages is

warranted.

WHEREFORE, Counter Claim Plaintiffs respectfully requests that judgment be entered in

its favor and against the Plaintiffs/Counter-Claim Defendants in excess of the requisite amount for

this Court to exercise jurisdiction, plus punitive damages, plus costs of suit and any other relief

determined to be appropriate by the Court.

## COUNT III- NEGLEGENT INFLICTION OF EMOTIONAL DISTRESS

**DAVID and CHRISTY SHERK, individually and as Parents and Natural Guardians of K.S., a minor v. MICHAEL FLOOD, JR. and ALECIA FLOOD, individually and as Parents and Natural Guardians of T.F., a minor**

63.     Defendants/Counter Claim Plaintiffs incorporates by reference the averments

contained in Paragraphs 1 through 62 inclusive of this Counter Claim Complaint, as if the same were

set forth at length herein and to the extent that such averments may be deemed relevant to this cause

of action.

64.     The Plaintiffs/Counter Claim Defendants collectively filed a Federal Civil Complaint

against the Defendants/Counter Claim Plaintiffs without fully investigating the facts of the events on

July 19, 2017 that led to T.F. being charged with one count of Indecent Assault, two counts of

Harassment and one count of Disorderly Conduct by the Zelienople Police Department.

65.     The Plaintiffs/Counter Claim Defendants collectively used terms in their Federal Civil

Complaint in order to generate media attention to this matter with the sole purpose to paint the

Defendants/Counter Claim Plaintiffs in a bad light.

66.     K.S. has never wavered in her recollection of the facts relating to the sexual assault she suffered at the hands of T.F.

67.     The Plaintiffs/Counter Claim Defendants failed to accept the criminal actions of T.F. and have chosen to attempt to try their civil action in the media and online.

68.     Moreover, the Plaintiffs/Counter Claim Defendants used their influence within the Seneca Valley School administration to permit K.S. to be bullied at School sponsored events wherein students were permitted to wear "Justice 4 [T.F.]" t-shirts to school and sporting events despite Seneca Valley's anti bullying policy wherein they intimidated and re-victimized K.S. while questioning her integrity.  **(See Exhibit F)**

69.     As a result of the collective actions of the Plaintiffs/Counter Claim Defendants, the Counter Claim Plaintiffs collectively have sustained shock and injury to their nerves and nervous system; have been subjected to and may hereafter be subject to great pain, suffering, embarrassment and inconvenience; have suffered extreme mental and emotional anguish and distress, causing severe depression, nightmares, stress, and anxiety, requiring psychological treatment,; have been required to undergo and in the future may be required to undergo painful diagnostic tests, treatment and extensive therapy for their injuries.  They all have experienced grief, anxiety, depression and nervousness.  All of the foregoing may be of a permanent and continuing nature and character. They have incurred and may hereafter incur expenditures for legal expenses, medical care, psychological care and treatment; counseling; nursing; drugs and kindred expenditures.

70.     As a further direct and proximate result of the Plaintiffs/Counter-Claim Defendants' above-stated acts of negligence and carelessness, the Counter Claim Plaintiffs have suffered and the Plaintiffs/Counter Claim Defendants are liable for the following damages:

a.     Past, present and future physical pain and suffering;

b.     Past, present and future mental anguish;

c.     Past, present and future humiliation and embarrassment;

      d.      Past, present and future inconvenience;

      e.      Past, present and future impairment of their ability to enjoy life; and,

      f.      Past, present and future impairment of their ability to enjoy hobbies and recreational pursuits.

WHEREFORE, Counter Claim Plaintiffs respectfully requests that judgment be entered in their favor and against all Plaintiffs/Counter Claim Defendants in excess of the requisite amount for this Court to exercise jurisdiction, plus punitive damages, plus costs of suit and any other relief determined to be appropriate by the Court.

## COUNT IV- NEGILIENT SUPERVISION
**DAVID and CHRISTY SHERK, individually and as Parents and Natural Guardians of K.S., a minor v. MICHAEL FLOOD, JR. and ALECIA FLOOD, individually and as Parents and Natural Guardians of T.F., a minor**

71.    Defendants/Counter Claim Plaintiffs incorporates by reference the averments contained in Paragraphs 1 through 72 inclusive of this Counter Claim Complaint, as if the same were set forth at length herein and to the extent that such averments may be deemed relevant to this cause of action.

72.    At all times relevant hereto, Plaintiffs/Counter Claim Defendants, MICHAEL FLOOD, JR. AND ALECIA FLOOD, were the adult parents and legal guardians of T.F., their son, a minor.

73.    At the time T.F. sexually assaulted K.S., MICHAEL FLOOD, JR. and ALECIA FLOOD negligently, carelessly, and recklessly supervised T.F., which caused injuries and damages to K.S. as more fully described herein.

74.    Prior to the sexual assault on July 19, 2017, T.F. had been reported by the Seneca Valley School District for harassment in the form of repeatedly committing acts which served no legitimate purpose which were acts of a sexual content and nature against another student while on a school bus on January 6, 2017.

75.     At the time T.F. sexually assaulted K.S., MICHAEL FLOOD, JR. and ALECIA FLOOD negligently, recklessly, and carelessly breached their duty of care and supervision to K.S. in the following particulars:

a.     Failing to properly supervise the whereabouts of their minor child, T.F., when they knew, or should have known, that he had dangerous propensities to engage in unwanted physical contact with K.S. and/or others;

b.     Failing to appreciate the risk of serious harm that would likely result from not properly supervising the whereabouts of their minor child, T.F., when they knew that he had previously had at least one incident wherein he inappropriately had physical unwanted contact with others;

c.     Failing to warn K.S. of their minor child, T.F.'s dangerous propensities to engage in physical unwanted contact so as to prevent injury to K.S.; and

d.     Failing to warn T.F.'s employer of their minor child's dangerous propensities to engage in physical unwanted contact, so that the Zelienople Community Pool could have either prevented T.F. from being alone with K.S. or so that the Zelienople Community Pool would have known to supervise T.F. more closely to prevent any sexual assault to occur.

76.     As a direct and proximate result of the negligence, recklessness, and carelessness of MICHAEL FLOOD, JR. and ALECIA FLOOD in failing to properly supervise their minor child so as to prevent K.S. from being sexually assaulted, the Plaintiffs collectively have sustained shock and injury to their nerves and nervous system; have been subjected to and may hereafter be subject to great pain, suffering, embarrassment and inconvenience; have suffered emotional and psychological trauma; have been required to undergo and in the future may be required to undergo painful diagnostic tests, treatment and extensive therapy for their injuries.  They all have experienced grief, anxiety, depression and nervousness.  All of the foregoing may be of a permanent and continuing nature and

character. They have incurred and may hereafter incur expenditures for legal expenses, medical care, psychological care and treatment; counseling; nursing; drugs and kindred expenditures.

77.     As a direct and proximate result of the injuries suffered by the collective Defendants/Counter Claim Plaintiffs, they will likely suffer residual effects, as described above.

78.     As a direct and proximate result of the collective actions of the Plaintiffs/Counter Claim Defendants, the collective Defendants/Counter Claim Plaintiffs have suffered emotional trauma, diminution in their ability to enjoy life's pleasures, and pain and suffering that continues to affect their daily lives.

79.     As a direct and proximate result of the collective actions of the Plaintiffs/Counter Claim Defendants, the collective Defendants/Counter Claim Plaintiffs have suffered, and will continue to suffer, great pain, suffering, inconvenience, humiliation, embarrassment, mental anguish, and loss of the ordinary pleasures of life.

WHEREFORE, Counter Claim Plaintiffs respectfully requests that judgment be entered in its favor and against all Counter Claim Defendants in excess of the requisite amount for this Court to exercise jurisdiction, plus punitive damages, plus costs of suit and any other relief determined to be appropriate by the Court.

## V.  JURY TRIAL DEMAND

Defendants/Counter Claim Plaintiffs/Cross Claim Plaintiffs David and Christy Sherk, individually and as Parents and Natural Guardians of K.S., a Minor, hereby demand a jury trial pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted,
GILLILAND VANASDALE SINATRA LAW OFFICE, LLC

By: */s/Jill Sinatra*
    JILL SINATRA, ESQUIRE
    PA I.D. No.: 95075
    1667 Route 228, Suite 300
    Cranberry Township, PA 16066
    (724)741-0536 - Telephone
    (724)741-0538 – Facsimile
    jill@gvlawoffice.com

    *Counsel for Defendants,*
    *David and Christy Sherk, individually and as*
    *Parents and Natural Guardians of K.S., a minor*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHAEL FLOOD, JR. and ALECIA
FLOOD, individually and as Parents and
Natural Guardians of T.F., a minor,

        Plaintiffs,

        v.

DAVID and CHRISTY SHERK, individually
and as Parents and Natural Guardians of K.S.,
a minor; DAVID and CHRISTINE SEAMAN,
individually and as Parents and Natural
Guardians of C.S., a minor; CRIS and
KIMBERLY SALANCY, individually and as
Parents and Natural Guardians of E.S., a
Minor; DAVID and LYNN REINA,
Individually and as Parents and Natural
Guardians of H.R., a minor and SENECA
VALLEY SCHOOL DISTRICT,

        Defendants.

CASE No.: 2:18-cv-01310-MRH

HONORABLE MARK R. HORNAK

## VERIFICATION

We, David and Christy Sherk, hereby verify that the statements set forth in the foregoing **Answer and Counter Claim Complaint** are true and correct to the best of our knowledge, information and belief.

We understand that false statements made herein are subject to the penalties of perjury pursuant to 28 U.S.C. § 1746, relating to unsworn declarations under penalty of perjury.

Date:  June 27, 2019                /s/ David and Christy Sherk

## CERTIFICATE OF SERVICE

All parties represented by counsel have been served by the Court's CM/ECF system.  David Reina and Lynn Reina are unrepresented, and have been served with this document via email at the email addresses listed on their Waiver of the Service of Summons forms as follows:

Lynn Reina:   shields148@hotmail.com

David Reina:   pghsteelers74@hotmail.com

By: */s/Jill Sinatra*
JILL SINATRA, ESQUIRE
PA I.D. No.: 95075
1667 Route 228, Suite 300
Cranberry Township, PA 16066
(724)741-0536 - Telephone
(724)741-0538 – Facsimile
jill@gvlawoffice.com

*Counsel for Defendants,*
*David and Christy Sherk, individually and as*
*Parents and Natural Guardians of K.S., a minor*