## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL FLOOD, JR., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | 2:18-cv-01310 |
| v. | ) | |
| | ) | |
| DAVID SHERK, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

**Mark R. Hornak, Chief United States District Judge**

Plaintiffs Michael Flood Jr., Alecia Flood, and minor plaintiff T.F. ("Plaintiffs") sued minor defendants K.S., C.S., E.S., and H.R. (collectively, the "minor Defendants"), as well as each minor Defendant's parent, for defamation. The allegedly defamatory statements arose from two incidents in which the minor Defendants allegedly falsely accused T.F. of sexual assault. T.F. and each of the minor Defendants were students at the Seneca Valley Intermediate High School ("Seneca Valley"), which is part of the Seneca Valley School District (the "School District") in Butler County, Pennsylvania. Plaintiffs also sued the School District, alleging that the School District violated the Fourteenth Amendment by applying its student discipline policies and its policies against sexual harassment in a discriminatory manner. Namely, Plaintiffs allege that the School District's decision to punish T.F. based upon the minor Defendants' accusations, coupled with the School District's decision to not punish the minor Defendants for making allegedly false accusations, led to the deprivation of T.F.'s constitutional rights.

Now before the Court is Defendant Seneca Valley School District's Motion to Dismiss for Failure to State a Claim. (ECF No. 105). This matter has been fully briefed by the parties, (ECF Nos. 106, 114, 115), and the Court held Oral Argument on this pending Motion on August 20, 2019, (ECF No. 130). The matter is now ripe for disposition. For the reasons that follow, the Court concludes that the Amended Complaint fails to plead that a final policymaker took any action toward T.F. that could represent official policy attributable to the School District. The Court also concludes that the Amended Complaint fails to plead that any final policymaker of the School District had actual or constructive knowledge of prior events of sexual misconduct such that any final policymaker could have been "deliberately indifferent" to the need for additional safeguards against disparate applications of School District policy. Therefore, the School District's Motion to Dismiss will be GRANTED. The Court further concludes that any further amendment would be futile, and thus Count III of the Amended Complaint will be DISMISSED WITH PREJUDICE.

The remaining claims in the Amended Complaint, as well as all counterclaims asserted by the Defendants in this case, will be DISMISSED WITHOUT PREJUDICE for lack of subject-matter jurisdiction. All of these remaining claims and counterclaims are brought under Pennsylvania law by Pennsylvania residents against Pennsylvania residents. The dismissal of the claim against the School District removes the final federal-law cause of action in this case, and thus the Court concludes that the exercise of supplemental jurisdiction over these remaining claims is not warranted.

## I.    BACKGROUND

### a.  Procedural history

Plaintiffs initiated this lawsuit on October 1, 2018, asserting a litany of claims against a number of defendants. (Compl., ECF No. 1). After extensive motions practice and a hearing on pending motions to dismiss, the Court dismissed all counts of the original Complaint without prejudice. (Mem. Order, ECF No. 94). Plaintiffs filed an Amended Complaint on May 30, 2019, asserting three causes of action: defamation against minor Defendant K.S., defamation against minor Defendants C.S., E.S., and H.R., and a violation of the Fourteenth Amendment against the School District pursuant to 42 U.S.C. § 1983. (Am. Compl., ECF No. 99). The minor Defendants each answered the claims against them, (ECF Nos. 108, 109, 111, and 126), and the Sherk and Seaman Defendants asserted counterclaims against Plaintiffs under Pennsylvania law, (ECF Nos. 109, 111). The School District moved to dismiss the claim against it, (ECF No. 105), and that Motion is the subject of this Opinion.

### b.  Factual background

The Court derives the following material allegations from Plaintiffs' Amended Complaint. (ECF No. 99). At all material times to this dispute, T.F., K.S., C.S., E.S., and H.R., were students at the Seneca Valley Intermediate High School ("Seneca Valley"). (Am. Compl. ¶ 12). T.F. and K.S. were both employed by the Zelienople Community Pool in Butler County, Pennsylvania, in the summer of 2017. (*Id.* ¶ 13). On or about July, 19, 2017, K.S. advised her supervisor that T.F. had sexually assaulted her at the pool, and T.F. was fired on July 26, 2017. (*Id.*).

On or about October 3, 2017, a teacher overheard K.S. telling other students that she had been sexually assaulted by T.F. at the pool over the summer. (Am. Compl. ¶ 15). K.S. was called

to a guidance counselor's office, where she accused T.F. of sexual assault. (*Id.*). The guidance counselor reported the allegation to Childline, a program operated by the Commonwealth of Pennsylvania for reporting child abuse and neglect. (*Id.*). K.S. was interviewed by a forensic interviewer employed by the Butler County Alliance for Children, and she maintained that T.F. had sexually assaulted her at the pool. (*Id.*). On October 8, 2017, T.F. was criminally charged with indecent assault and two counts of harassment. (*Id.* ¶ 16). K.S. complained to administrative personnel at Seneca Valley that T.F. made her feel "uncomfortable" in class because of the incident over the summer at the pool. (*Id.* ¶ 17). Seneca Valley principal, Dr. Matt Delp, responded by changing T.F.'s class schedule. (*Id.*). After a Petition Alleging Delinquency was filed,[1] T.F. entered into a consent decree under which he did not admit K.S.'s accusation, but agreed to be supervised by the Butler County Juvenile Probation Department for a six-month period of probation. (*Id.* ¶ 18).

On March 23, 2018, T.F. received an invitation from C.S. inviting him to "hang out" with her and her friends. (Am. Compl. ¶ 19). T.F. claims that he visited C.S.'s residence and saw C.S., E.S., and H.R. consuming alcoholic beverages. (*Id.*). T.F. claims that he did not consume any alcohol and left shortly after arriving. (*Id.*). On March 26, 2018, other students at Seneca Valley overheard K.S. and C.S. preparing a false statement that C.S. would provide to a Seneca Valley guidance counselor. (*Id.* ¶ 20). C.S. allegedly told the guidance counselor that T.F. entered her home uninvited on the night of March 23, 2018, and sexually assaulted her. (*Id.*). Thereafter, C.S., E.S., and H.R., were interviewed by the Butler County Alliance for Children. (*Id.*). C.S.,

---

[1] The Amended Complaint states that this Petition was filed on November 1, 2018, (Am. Compl. ¶ 18), and references an "Exhibit 2" to the Amended Complaint. There is no "Exhibit 2" attached to the Amended Complaint. There was an "Exhibit 2" attached to the original Complaint, (ECF No. 1-3), but the filing of an Amended Complaint supersedes the original Complaint. In any event, it appears to the Court that the "November 1, 2018" date is in error, since Exhibit 2 to the original Complaint lists a "filed" date of November 1, 2017, for a Petition Alleging Delinquency.

E.S., and H.R. allegedly repeated their accusations to other Seneca Valley students over the next several days. (*Id.* ¶¶ 21–27).

T.F. was criminally charged with indecent assault, forcible compulsion, criminal trespass, and simple assault on April 9, 2018. (Am. Compl. ¶ 29). On April 10, 2018, T.F. was removed from class at Seneca Valley by local police, after having been placed in leg and wrist shackles. (*Id.* ¶ 30). Following a hearing, T.F. was confined at the Keystone Education Center for nine days. (*Id.*). On April 12, 2018, T.F. was released on house arrest with an ankle monitor. (*Id.* ¶ 32). Seneca Valley athletic director Heather Lewis did not permit T.F. to play baseball for Seneca Valley, despite Butler County probation officials informing Mr. and Mrs. Flood that he would be permitted to play baseball. (*Id.*).

Shortly after T.F.'s arrest, the Floods began investigating the allegations and incidents and obtained exculpatory evidence. (Am. Compl. ¶¶ 33–38). The Floods provided the Butler County District Attorney's Office with this information on May 21, 2018. (*Id.* ¶ 38). T.F.'s ankle monitor was removed on May 29, 2018, after Assistant District Attorney Russ Karl interviewed E.S. and H.R., who allegedly admitted to lying about the sexual assault. (*Id.*). On August 30, 2018, all charges against T.F. stemming from the March 23, 2018, incident were dismissed by court order. (*Id.* ¶ 39). K.S., C.S., E.S., and H.R., were not punished by Seneca Valley in connection with these events. (*Id.* ¶ 40).

Plaintiffs attach several School District student conduct policies to their Amended Complaint. (Am. Compl., Exh. 15, Exh. 16, ECF Nos. 99-1, 99-2). These policies were promulgated and approved by the Seneca Valley School District School Board of Directors (the "School Board") and were in operation during all times relevant to this dispute. (Am. Compl. ¶¶ 61, 62). Pursuant to these policies, the principal is charged with investigating sexual harassment

allegations and doling out discipline. (*Id.* ¶ 63). Plaintiffs allege that there is only an appeal process for students that are subject to discipline by the principal, but there is no process for an aggrieved student to appeal the principal's decision that discipline is not warranted in a particular case. (*Id.*).

Plaintiffs also allege five instances involving sexual misconduct involving others that, in Plaintiffs' view, establish a pattern of discriminatory disciplinary decisions made by Seneca Valley officials on the basis of sex. Paragraphs 64 through 68 of the Amended Complaint read as follows:

> 64. In December 2016, a male Seneca Valley Intermediate High School student was accused by two girls of touching them inappropriately. One girl admitted that she put the boy's cell phone down her shirt, precipitating his attempt to retrieve it. The principal failed to interview witnesses supporting the boy's claim that he had done nothing wrong to the second girl. The boy was suspended for ten days but the girl who admitted that her accusation was false received no discipline and the boy's claim that the second girl's allegations were false was not investigated.
>
> 65. In 2017, multiple Seneca Valley Intermediate High School female students (who upon information and belief were cheerleaders) sexted male students. "The display or distribution of pornography to others, including the use of a cellular telephone" is a Level III Offense pursuant to Policy #218. The female students were not disciplined while male students sexting girls were subjected to discipline.
>
> 66. In 2018, Seneca Valley Intermediate High School male student D.H. was accused via an anonymous online complaint of snapping a girl's bra and touching her thigh. He was suspended from school even though there were no witnesses and no proof whatsoever.
>
> 67. In 2018, a Seneca Valley High School male student was suspended due to a false sexual harassment allegation made by a female student. The principal failed to investigate the boy's claim that the allegation was false.

68. In 2019, a Seneca Valley Middle School male student was falsely accused of sexually harassing a female student. The girl later admitted that she lied, but she was not disciplined.

According to Plaintiffs, neither Dr. Delp nor the School District have punished K.S., C.S., E.S., or H.R., despite having knowledge of the alleged falsity of their allegations and despite multiple complaints from the Plaintiffs in this case. (Am. Compl. ¶¶ 70–71). The Plaintiffs argue that this evinces a discriminatory application of Seneca Valley's polices against bullying and sexual harassment, in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. (*Id.* ¶ 71).

## II.   **STANDARD OF REVIEW**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed for "failure to state a claim upon which relief can be granted." In reviewing a motion to dismiss, the Court conducts a two-part analysis, first separating the factual and legal elements of a claim. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). The Court "may disregard any legal conclusions," *id.*, and then must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). However, the Court need not accept as true any unsupported conclusions, unsupported inferences, nor "threadbare recitals of elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff's factual allegations must "raise a right to relief above the speculative level" and state a "plausible claim for relief" to survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The plausibility standard is not

akin to a "probability requirement," but it asks for more than the sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

If a claim is dismissed pursuant to Rule 12(b)(6), a district court must provide leave to amend "unless an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 236 (citations omitted). A plaintiff need not expressly request such an opportunity to amend. *Id.*

## III.   ANALYSIS

At the outset, the Court emphasizes that the Court is expressing no opinion nor drawing any conclusions as to Counts I and II of the Amended Complaint, the defamation claims, including as to whether the minor Defendants' accusations against T.F. were falsely and/or maliciously made. The Court has, as it must, accepted the Plaintiffs' factual allegations in the Amended Complaint as true for the purposes of this Motion. *Phillips*, 515 F.3d at 233.

### a.   Seneca Valley's Motion to Dismiss

Generally, Plaintiffs may use 42 U.S.C. § 1983 as a vehicle to assert claims for violations of their constitutional rights by municipalities and other local government units, including public school districts. *See generally Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Plaintiffs allege that the School District applied its disciplinary policies in a discriminatory manner on the basis of sex. (Am. Compl. ¶¶ 71, 73). The Fourteenth Amendment provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. It is well-recognized that differential enforcement of gender-neutral policies on the basis of sex can form the basis of an Equal Protection Clause claim. *See, e.g., Keenan v. City of Phila.*, 983 F.2d 459, 465–66 (3d Cir. 1992). A plaintiff must be able to demonstrate any disparate treatment was based upon his

-8-

gender, and that such discrimination was intentional or purposeful. *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 150–51 (3d Cir. 2005) (citations omitted).

Crucially, however, to assert such a claim against the School District itself, Plaintiffs must also be able to demonstrate that a policy or custom of the School District caused the alleged constitutional violation. *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 173 (3d Cir. 2005). A policy for *Monell* purposes is an affirmative act attributable to the local government unit through an official act, proclamation, or edict. *McTernan v. City of York*, 564 F.3d 636, 657–58 (3d Cir. 2009) (citations omitted). A custom is established "by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Watson v. Abington Twp.*, 478 F.3d 144, 155–56 (3d Cir. 2007) (quotations and citations omitted). The School District cannot be held liable under a *respondeat superior* theory because a local government unit may only be held liable under § 1983 for those acts for which it is actually responsible. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)). Therefore, only those officials with "final policymaking authority"—as defined by state law—may directly subject a school district to liability through their actions. *Id.* (citing *Pembaur*, 475 U.S. at 483).

In the Court's estimation, the dispositive question before the Court is whether the Amended Complaint alleges sufficient facts demonstrating that anyone from the School District with "final policymaking authority" acted or ratified a course of action that resulted in the deprivation of T.F.'s constitutional rights.

    i. Neither the Seneca Valley principal nor athletic director are final policymakers for *Monell* purposes.

The School District argues that the Plaintiffs have failed to identify any action by a final policymaker of the School District that would subject the School District to liability under

§ 1983. Plaintiffs take issue with two actions taken by School District officials to T.F.'s detriment. First, Principal Delp changed T.F.'s class schedule. (Am. Compl. ¶¶ 17, 70). Second, the School District's Athletic Director allegedly prohibited T.F. from playing baseball for Seneca Valley. (*Id.* ¶¶ 32, 70).[2]

At the outset, Plaintiffs do not contend that the School District officially promulgated and issued an unconstitutional policy in the form of discriminatory student discipline rules or any other official proclamation or edict. Rather, Plaintiffs argue that the actions and decisions of certain School District officials constitute School District policy. A single act may represent government "policy" for *Monell* purposes when such act is made by someone possessing "final authority to establish municipal policy with respect to the action ordered." *Pembaur*, 475 U.S. at 480–81. The Court looks to state law to determine who possesses this final policymaking authority. *Praprotnik*, 485 U.S. at 124. An official has final policymaking authority if "as a matter of state law, the official is responsible for making policy *in the particular area* of municipal business in question" and if "the official's authority to make policy in that area is *final and unreviewable*." *Hill v. Borough of Kutztown*, 455 F.3d 225, 245 (3d Cir. 2006) (internal citations omitted) (emphasis in original).

Plaintiffs' attempt to hold the School District liable under § 1983 for the actions of Seneca Valley's principal and/or athletic director fails in both respects. In this context, the particular areas of "business" in question are interscholastic athletics and student discipline. First, with respect to the athletic director, Pennsylvania law is clear that a school district's board of school directors is the final policymaker with respect to "the management, supervision, control, or prohibition of exercises, athletics, or games of any kind." 24 Pa. C.S. § 5-511(a); *see*

---

[2] Plaintiffs do not allege that the school employees' initial reporting of the minor Defendants' accusations to Childline was unlawful. At Oral Argument, Plaintiffs' counsel confirmed that the schedule change and denial of baseball privileges were the only adverse actions asserted for Fourteenth Amendment purposes.

*also Patrick v. Great Valley Sch. Dist.*, 296 F. App'x 258, 262 (3d Cir. 2008) ("[Pennsylvania]

state law allocates final policymaking authority for the management, supervision, control or

prohibition of exercise, athletics or games of any kind to the . . . School Board.") (citing 24 Pa.

C.S. § 5-511(a)). Even if the Seneca Valley athletic director unilaterally determined that T.F.

could not play baseball, her decision to do so would lack the requisite finality to represent an

official policy of the School District.

With respect to the actions of the Seneca Valley principal, the Plaintiffs have not cited

any Pennsylvania decisional or statutory law granting school principals final authority to

promulgate official and final policy in the area of student discipline. *Cf. McGreevy v. Stroup*, 413

F.3d 359, 368–369 (3d Cir. 2005) (concluding that a school district superintendent is a final

policymaker over employee ratings determinations *because* 24 Pa. C.S. § 11-1123 grants

superintendents such final authority). Rather, 24 Pa. C.S. § 5-510 expressly gives the school

board of directors the authority to promulgate rules and regulations for student behavior.[3]

> The board of school directors in any school district may adopt and
> enforce such reasonable rules and regulations as it may deem
> necessary and proper, regarding the management of its school
> affairs and the conduct and deportment of all superintendents,
> teachers, and other appointees or employes [sic] during the time
> they are engaged in their duties to the district, as well as regarding
> the conduct and deportment of all pupils attending the public
> schools in the district, during such time as they are under the
> supervision of the board of school directors and teachers, including
> the time necessarily spent in coming to and returning from school.

24 Pa. C.S. § 5-510. And, though 24 Pa. C.S. § 21-2107 vests school principals (along

with the superintendent of schools, associate superintendents, and assistant district

---

[3] The School District also relies on 24 Pa. C.S. § 3-301 and 24 Pa. C.S. § 5-507 as establishing that the School Board is vested with final policymaking authority under Pennsylvania law. Sections 3-301 and 5-507 are not applicable. Section 3-301 provides that "[t]he public school system of the Commonwealth shall be administered by a board of school directors," but no additional detail is provided as to what it means to "administer" a public school system. Section 5-507 grants the board of school directors in each school district the power to levy and collect taxes, but says nothing about setting policies related to student discipline.

superintendents) the authority and statutory duty to "inquire into and supervise all matters relating to the government, courses of study, method of teaching, discipline, and conduct of all schools in their respective districts," such authority is "under the supervision and direction of the superintendent of schools." Read together, 24 Pa. C.S. § 5-501, 24 Pa. C.S § 21-2107, and Pennsylvania's *in loco parentis* statute codified at 13 Pa. C.S. § 13-1317, provide the hierarchical structure of student discipline in Pennsylvania public schools. At the top, the school board of directors in each district formulates and promulgates the official rules and policies for student conduct and discipline. 24 Pa. C.S. § 5-501. District superintendents receive reports from associate and assistant district superintendents, along with school principals, all of whom are tasked with supervising matters related to student discipline within the schools. 24 Pa. C.S. § 21-2107. Teachers and school principals are tasked with enforcing a school district's disciplinary rules "on the ground" in their respective schools. 24 Pa. C.S. § 13-1317; *see also* 24 Pa. C.S. § 13-1318. Building principals enforce the rules, superintendents supervise the principals, and the school board has the final say as to student conduct and discipline.

Undoubtedly, this statutory scheme affords school principals some discretion and decisionmaking authority, but "decisionmaking authority does not equate to final policymaking authority for purposes of *Monell* liability." *Smith v. Cent. Dauphin Sch. Dist.*, No. 05-01003, 2007 WL 2262936, at *6 (M.D. Pa. Aug. 6, 2007) (citing *Praprotnik*, 485 U.S. at 129–30; *Walker-Serrano by Walker v. Leonard*, 168 F. Supp. 2d 332, 346 (M.D. Pa. 2001)). Rather, an official must have "final, unreviewable discretion to make a decision or take an action" for such a discretionary act to be considered an act of the municipality itself. *Andrews v. City of Phila.*, 895 F.2d 1469, 1481 (3d Cir. 1990), *superseded by statute on other grounds as stated by*, *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 214 (3d Cir. 2017). This is so even if that official—here,

the school principal—allegedly deviates from School District disciplinary policy because, "those policies, rather than the subordinate's departures from them, are the act of the municipality." *Id.* (quoting *Praprotnik*, 485 U.S. at 127). Indeed, district courts in the Third Circuit appear to uniformly refuse to consider a school principal to be a final policymaker such that a principal's disciplinary decisions, without more, could subject a school district to liability under § 1983. *See, e.g.*, *S.K. v. N. Allegheny Sch. Dist.*, 168 F. Supp. 3d 786, 813 (W.D. Pa. 2016); *Douglas v. Brookville Area Sch. Dist.*, No. 10-1087, 2010 WL 5313448, at \*8 (W.D. Pa. Dec. 20, 2010); *Smith v. Cent. Dauphin Sch. Dist.*, No. 05-01003, 2007 WL 2262936, at \*6 (M.D. Pa. Aug. 6, 2007); *Walker-Serrano*, 168 F. Supp. 2d at 346; *Marcolongo v. Sch. Dist. of Phila.*, No. 98-5196, 1999 WL 1011899, at \*11 (E.D. Pa. Nov. 5, 1999), *aff'd*, 262 F.3d 404 (3d Cir. 2001). Pennsylvania law grants school principals discretion in disciplinary decisions, but not *unreviewable* discretion, and thus these discretionary disciplinary decisions are not actions attributable to the School District for § 1983 liability purposes.

This review of Pennsylvania statutory law begins and ends this Court's inquiry because "the Supreme Court has forbidden courts from "assuming that municipal policymaking authority lies somewhere other than where the applicable law purports to put it."" *Santiago v. Warminster Twp.*, 629 F.3d 121, 135 n.11 (3d Cir. 2010) (quoting *Praprotnik*, 485 U.S. at 125 n.1). That said, Seneca Valley's own rules and policies confirm that the Seneca Valley principal lacks final policymaking authority. Policy #218, the student discipline policy, recognizes that the School Board "has the authority to make reasonable and necessary rules governing the conduct of students." (Am. Compl., Exh. 15 at 1, ECF No. 99-1). And, though "[t]he building principal shall have the authority to assign discipline to students" such authority is "subject to . . . the student's due process right to notice, hearing, and *appeal*." (*Id.* at 7) (emphasis added). What is more, the

same policy reveals that another school official—the Superintendent—is charged with promulgating "rules and regulations to implement Board policy for student conduct." (*Id.*). According to these policies (promulgated by the School Board), the building principal has no role in *creating* any policy relating to student discipline. Rather, the building principal's role is to *enforce* the policies created by the School Board according to the rules and regulations established by the Superintendent. The building principal is plainly subordinate to at least the Superintendent and the School Board and cannot be a final policymaker in these regards.

Policy #248, the sexual harassment policy, further supports this conclusion because it describes an internal appeal process for students accused of sexual harassment. (Am. Compl., Exh. A at 9–13). That policy provides that any reports of sexual harassment must be brought to the attention of the building principal who, in turn, must notify the Superintendent. (*Id.* at 10). A "designated administrator" is then charged with investigating the matter and will attempt to resolve it at "Step 1" of the process, (*id.* at 11), who presumably would be the building principal according to Policy #218. A written record is created of the investigation and all records, recommendations, and descriptions of the resolution of the matter are forwarded to the Superintendent. (*Id.*). But then, "[i]f the complaint is not resolved *in the satisfaction of either party* at STEP 1, the party will submit a detailed statement of those reasons for dissatisfaction to the Superintendent" who will then institute more formal administrative procedures in an attempt to resolve the matter. (*Id.*) (emphasis added). There is no additional recourse for an accused student if the Superintendent determines that a suspension for ten days or less is warranted. (*Id.* at 12). If a harsher punishment is imposed, the accused student is afforded an opportunity to appeal in a formal hearing before the School Board. (*Id.*).

-14-

So, at the very minimum, there is an appeal process for any student accused of sexual harassment that is "dissatisfied" with the punishment that he or she receives from a building principal. Thus, none of these disciplinary actions by a building principal would be final because they were subject to review by at least one higher-up, and Pennsylvania law does not vest building principals with final decisionmaking authority in this context. *Accord Walker-Serrano*, 168 F. Supp. 2d at 346 (holding that a school principal does not have final policymaking authority because "her decisions can be reviewed by [the Superintendent], the Superintendent by the School Board"); *cf. McGreevy*, 413 F.3d at 369 (holding that superintendents have final policymaking authority over employee ratings *because* 24 Pa. C.S. § 11-1123 grants them such authority).[4]

Plaintiffs concede that an appeal process exists for those students subjected to discipline, (Br. in Opp. at 2, ECF No. 114), and attempt to circumvent this by arguing that the principal was the *de facto* policymaker for deciding when students would *not* be punished because his decisions in this regard were not subject to an appeal. There are several problems with this argument. Most importantly, the Supreme Court of the United States has directly and expressly disavowed premising municipal liability on the basis of "*de facto*" policymaking authority. *Praprotnik*, 485 U.S. at 131. Second, premising liability on the principal's decision to *not* discipline another student would be akin to punishing the principal for inaction, and the "Third Circuit repeatedly has declined to permit claims to proceed where they are founded on a failure to act." *S.K.*, 168 F. Supp. at 815 (collecting cases).

---

[4] Plaintiffs argue in their Brief in Opposition to this Motion that "paragraphs 70 and 71 of the Amended Complaint plead that the school board ratified the decisions of the principal; and the principal acted in the exercise of the final authority delegated to him by the school board of directors." (ECF No. 114 at 10). This is simply not accurate. There are no facts pleaded in those paragraphs—or in any paragraph of the Amended Complaint—in which it could even be inferred that the school board "delegated" final authority to the principal or ratified any of his decisions, and Plaintiffs have advanced no basis to plausibly infer or conclude otherwise.

This rule makes sense in this context. Else, a building principal's *actions* could not be attributable to a School District because the principal lacks final policymaking authority, but that same principal's *inactions* could be attributable to the School Board. But a building principal, like countless other school officials, "does not act" in countless ways every day. Contrary to affirmative acts, which suggest at least some intentionality, a decision to "not do" something may often not be a "decision" at all. It would border on nonsensical if, under § 1983, a principal is solely and personally responsible when he *acts*, but the School District could be answerable for every action a principal *does not* take. *Accord City of Okla. City v. Tuttle*, 471 U.S. 808, 823 (1985) ("[T]he word "policy" generally implies a course of action consciously chosen from among various alternatives.") (plurality opinion).

Third, premising the School District's liability solely on choosing *not* to punish the minor Defendants—rather than affirmatively punishing T.F.—raises serious problems as to causation and redressability. Even if Plaintiffs could succeed in demonstrating that the principal's decision to not punish the minor Defendants was an act attributable to the School District as the act of a final policymaker, the Plaintiffs would "bear[] the additional burden of proving" that this act "was the proximate cause of the injuries suffered." *Bielevicz v. Dubinion*, 915 F.2d 845, 850 (3d Cir. 1990). The "deprivation of federal rights" allegedly caused by School District action was changing T.F.'s class schedule and preventing T.F. from playing baseball for Seneca Valley.[5] Even if the minor Defendants were later punished by the school for their allegedly false allegations, this later punishment would have no effect on the punishment that had already been inflicted upon T.F. Plaintiffs may not think it is fair that the minor Defendants were not

---

[5] Certainly, the Amended Complaint alleges further deprivations of T.F.'s rights, such as reputational harm suffered from the allegedly false allegations and his deprivation of liberty while incarcerated, but these harms are attributable to other parties, not the School District.

punished, but this is not enough to satisfy causation here. The assertion that T.F.'s psychological and physical harms are being exacerbated by "enduring the injustice" of knowing that his accusers have not been punished, (Am. Compl. ¶ 76), is too attenuated from any School District action to demonstrate proximate causation.

And lastly, Plaintiffs' "failure to discipline" argument is essentially an attempt to recast their argument that the principal failed to apply the School District's policies in a non-discriminatory manner. But, as Plaintiffs concede in their Amended Complaint, the School District's policies are gender-neutral. The Plaintiffs do not challenge these policies, rather, they challenge the principal's alleged departures from them—which can only be attributable to the School District if the principal were a final policymaker, which he is not. *Andrews*, 895 F.2d at 1481. However, consistent and persistent departures from the School District's policies could support a viable § 1983 claim if the Plaintiffs plead sufficient facts demonstrating a custom of discriminatory enforcement. This theory will be addressed below.

> ii. The Plaintiffs have failed to allege facts demonstrating that the School Board knew of or acquiesced to any prior disciplinary decisions involving sexual misconduct.

Plaintiffs also attempt to premise governmental liability on the School Board's alleged knowing acquiescence to the Seneca Valley principal's pattern of discriminatory enforcement of the School District's policies which, in Plaintiffs' view, establishes that the School Board is deliberately indifferent to the need to control the actions of its employee (the principal). (Am. Compl. ¶¶ 69, 71, 73). In other words, Plaintiffs argue that the School District had an unconstitutional custom of enforcing its gender-neutral disciplinary and sexual harassment policies in a discriminatory manner.

A custom may be established by proving that a final policymaker had knowledge of, and had acquiesced to, a settled practice. *See Watson*, 478 F.3d at 156 (citing *Fletcher v. O'Donnell*, 867 F.2d 791, 793–94 (3d Cir. 1989)). Such knowledge and acquiescence can be established by demonstrating that the final policymakers "were aware of similar unlawful conduct in the past, but failed to take precautions against future violations." *Beck v. City of Pittsburgh*, 89 F.3d 966, 972 (quoting *Bielevicz*, 915 F.2d at 851). But even then, a plaintiff must also demonstrate that policymakers were "deliberately indifferent" in their acquiescence to a custom. *See Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 193 (3d Cir. 2009) (citing *Berg v. Cty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000)). "Deliberate indifference" is a stringent standard of fault. *Bryant Cty. v. Brown*, 520 U.S. 397, 410 (1997). In this context, proving "deliberate indifference" requires a showing that policymakers failed to take action to control the agents of the government despite the obvious need to do so, along with the likelihood that the inadequacy of existing practice would result in the violation of constitutional rights. *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (citing *Bryant Cty.*, 520 U.S. at 417–18 (Souter, J., dissenting)).

The Plaintiffs assert that the incidents described in paragraphs 64–68 of the Amended Complaint establish a pattern of disparate applications of the School District's disciplinary policies on the basis of sex. The Court will assume for the purposes of this Motion that the Plaintiffs are correct and that these other incidents would be sufficient at the pleading stage to establish a pattern of discriminatory enforcement of these policies. Each of the described incidents involves some allegation of sexual harassment and/or misconduct, and in each instance male students were arguably treated more harshly than female students who were also implicated in the incident. The Court is unaware of any Third Circuit or Supreme Court authority

prescribing a "minimum" number of related incidents that must be shown to establish a custom, but the Third Circuit has held that five written citizen complaints of excessive force against a police officer in less than five years, none of which resulted in discipline for the officer, was sufficient evidence for a jury to conclude that a city maintained a custom of tolerating excessive force by its police officers. *See Beck*, 89 F.3d at 972–76. The Court sees no reason why five instances of reports of sexual misconduct resulting in arguably disparate disciplinary decisions as between males and females, occurring between the years of 2016–2019 (an even shorter timeframe than in *Beck*), would not also be sufficient, particularly at the motion to dismiss stage. (*See* Am. Compl. ¶¶ 64–68).

But, having concluded that the School Board (and not the Seneca Valley principal) is the final policymaker for the School District in this arena, the real issue becomes whether it is (or could be) plausibly shown that the School Board had knowledge of *any* of the incidents in paragraphs 64–68. Plaintiffs' "custom" theory fails in this regard. The Plaintiffs do not plead that the School Board or any of its members had any involvement in the disciplinary decisions in paragraphs 64–69. Nor do the Plaintiffs plead that the School Board or any of its members were made aware of these incidents in any way. There are no allegations that any of the incidents were appealed or reported to the School Board, nor are there allegations from which it could be inferred that the School Board would have been in any position to learn about these other disciplinary decisions. And, at Oral Argument, Plaintiffs' counsel conceded that he had no facts that would support any of those things.[6]

These deficiencies distinguish *Beck*, where the Third Circuit concluded that five written reports of excessive force against one police officer in a short period of time were sufficient for a

---

[6] And, other than a perhaps speculative hope articulated at Oral Argument, Plaintiffs' counsel advanced no basis to conclude that discovery would show otherwise.

jury to infer "that the Chief of Police knew, or should have known, of [the officer's] propensity for violence when making arrests." 89 F.3d at 974. But in *Beck*, a formal reporting process was described and the written complaints directly addressed the behavior complained of—excessive force. *See id.* at 969–70. Though not necessary to infer knowledge by the School Board, there were no direct complaints of allegedly discriminatory disciplinary actions until the instant case (unlike in *Beck*), which weakens any inference that the School Board would know that there was a problematic practice occurring. And, the only cited or discussed reporting procedure regarding student discipline is in the School District policies attached to the Amended Complaint. None of these procedures involve a report being generated by a disciplinarian and communicated to the School Board unless other appellate procedures are instituted. Rather, it appears from Policy #248 that the only mandatory reporting of sexual harassment disciplinary decisions and investigations is reporting from the "designated administrator" charged with investigating an accusation to the Superintendent. (Am. Compl., Exh. A at 11). In short, the Amended Complaint fails to plead any facts from which it could be inferred that the School Board had actual or constructive knowledge of any of the other alleged instances described in the Amended Complaint. Indeed, Plaintiffs' counsel conceded during Oral Argument on this Motion that the School Board's knowledge is only pleaded through an "imputed" knowledge theory. Plaintiffs did not appear to contest that the Amended Complaint fails to allege facts from which actual knowledge or acquiescence by the School Board could be plausibly inferred.

Plaintiffs nonetheless claim that the principal's knowledge of his previous disciplinary decisions is *imputed* to the School Board because the Seneca Valley principal is an agent of the School Board. Plaintiffs rely on common law agency principles for this argument and cite a tax decision from the Pennsylvania Supreme Court in support. *See Basile v. H&R Block, Inc.*, 761

A.2d 1115 (Pa. 2000). That case concerned solely Pennsylvania law and is plainly inapplicable here. Plaintiffs also cite *In re Color Tile, Inc.*, a case involving unsecured creditors seeking to recover dividends paid by a Chapter 11 debtor in a bankruptcy case. 475 F.3d 508 (3d Cir. 2007). While *In re Color Tile* does state the accepted agency law maxim that knowledge of an agent is imputed to the agent's principal, *id.* at 513 (citing *Am. Sur. Co. v. Pauly*, 170 U.S. 133, 153 (1898)), the Court is hard-pressed to find any connection (legal, factual, or otherwise) between a bankruptcy case involving allegedly fraudulent stock transfers and this § 1983 case. Similarly, Plaintiffs' reliance on *Huston v. Procter & Gamble Paper Products Corp.*, a Title VII case, is also misplaced. 568 F.3d 100 (3d Cir. 2009). That decision also states basic agency law principles, but has nothing to do with § 1983 doctrines, and neither Third Circuit case cited by the Plaintiffs holds or even hints that knowledge from an agent can be imputed to a principal in a § 1983 case merely by virtue of an employer-employee relationship.

Rather, it is a bedrock principle of municipal liability under § 1983 that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694; *see also C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198 (3d Cir. 2000) (*en banc*) ("It is . . . well established that a defendant in a civil rights case cannot be held responsible for a constitutional violation which he or she neither participated in nor approved."). "Imputing" the knowledge of deviations from the School District's disciplinary policies to the School Board members based solely on a principal/agent relationship would plainly subject the School District to *respondeat superior* liability. *Cf. C.N.*, 430 F.3d at 176 (distinguishing between official school board policy, which may the basis of § 1983 liability, and "merely . . . subordinates defying instruction," which ordinarily may not). This is so because the School District's liability for an allegedly unlawful custom would be premised only on imputed

-21-

knowledge of similar incidents. *Cf. Oliva*, 226 F.3d at 202 (citations omitted). The claim here is that the School Board (the policymakers) did nothing to stop the Seneca Valley principal from (allegedly) applying the disciplinary policies disparately on the basis of sex. But without *actual* knowledge of the principal's alleged deviations from the School Board's policies, there can be no fault in the School Board's asserted inaction under § 1983. "Custom" liability under § 1983 requires policymakers to be *deliberately* indifferent to a pattern of unconstitutional practices—not carelessly indifferent, negligently indifferent, and certainly not vicariously indifferent. *See Bryant Cty.*, 520 U.S. at 420 (describing deliberate indifference "as tantamount to intent"). The School Board cannot be *deliberately* indifferent to the need for official policy changes regarding its student conduct policies if its only "knowledge" of alleged deficiencies in the current scheme is through knowledge imputed to it by the knowledge of the alleged wrongdoer. Presumably, under Plaintiffs' theory, the knowledge of *all* School District employees, as agents of the School District, would be imputed to the School Board, such that the School Board's failures to identify and rectify any patterns of employee misconduct would thereby subject the School District to § 1983 liability. In this Court's estimation, this would plainly run contrary to *Monell*'s directive that local government units only be held liable for acts "for which [they are] actually responsible." *Pembaur*, 475 U.S. at 479. The School Board cannot be "actually responsible" for acquiescing to a pattern of conduct that they had no knowledge of, but is otherwise known to the alleged wrongdoer.[7]

---

[7] Plaintiffs plead in paragraph 70 that the School Board "possesses actual knowledge of the aforedescribed conduct of K.S., C.S., E.S., and H.R.," and this assertion is supported in paragraph 71 through an allegation that the Floods and T.F. lodged "multiple complaints" about the events in this lawsuit. At the pleading stage, this is sufficient for a jury to infer that the School Board had knowledge about the event *involving T.F.*, but the Amended Complaint is otherwise devoid of any facts or assertions that the School Board had knowledge (actual or otherwise) of the alleged pattern of discriminatory enforcement by the principal in the other incidents in the Amended Complaint. And, while "single incident" liability is possible in a § 1983 municipal liability claim, *see City of Canton v. Harris*, 489 U.S. 378, 390 (1989), this is not one of those cases. There are no allegations in the Amended Complaint that the School Board failed to train its agents to deal with allegations of sexual harassment or misconduct, and the very existence of

The Supreme Court's decision in *Gebser v. Lago Vista Independent School District* further reinforces this conclusion. 524 U.S. 274 (1998). That case involved claims of sexual assault and harassment perpetrated by a teacher against a student. *Id.* at 277–79. The *Gebser* Court held that, under 20 U.S.C. § 1682, an "appropriate person" must have actual knowledge of the alleged discrimination in order for there to be an available damages remedy under Title IX. *Id.* at 290. Though the claims in that case were brought under Title IX, the Supreme Court discussed municipal liability under § 1983 as a "rough parallel" to the requisite showing of fault under Title IX in reaching their conclusion. *Id.* at 290; *accord S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 263 n.23 (3d Cir. 2013) (equating the "deliberate indifference" standard in § 1983 suits and "the Supreme Court's definition of deliberate indifference in the context of sexual harassment claims under Title IX"); *see also Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 294 (3d Cir. 2014) ("[I]n order to show that [the school district] acted with deliberate indifference, appellants must show that it had knowledge of rights violations."). In *Gebser*, as in this case, the only official alleged to have had information about the alleged misconduct was the alleged wrongdoer himself. *See* 524 U.S. at 291. The Supreme Court concluded that, because "deliberate indifference" as to the discrimination required actual knowledge by an "appropriate person," "the knowledge of the wrongdoer himself is not pertinent to the analysis." *Id.* In the Court's estimation, the situation presented here is analogous. The School Board, like the "appropriate person" in *Gebser*, is the entity that is in a position to rectify

---

policies against sexual harassment and misconduct belies the assertion that the School Board was deliberately indifferent for the need to have some preventative practice in place. Without prior knowledge that the policies in place were deficient in some regard, the School Board did not "disregard a known or obvious consequence" of leaving the current policies in place. *See Sanford v. Stiles*, 456 F.3d 298, 313–14 (3d Cir. 2006) (quoting *Brown*, 520 U.S. at 410). Finally, Plaintiffs argued for the first time at Oral Argument that the filing of the Amended Complaint put the School Board on notice of the prior incidents. This is irrelevant. *See Logan v. Bd. of Educ. of Sch. Dist. of Pittsburgh*, 2015 WL 5971198, at *15–*16 (W.D. Pa. Oct. 14, 2015) (dismissing a § 1983 claim with prejudice because no facts were pleaded that the policymaking defendants had knowledge of a pattern of unconstitutional conduct until after the alleged injury).

the alleged wrong. Without *actual* knowledge that it was "failing to prevent a deprivation of federal rights," *id.*, the School Board's inactions were not deliberately indifferent, regardless of what the knowledge of one of the School Board's subordinates was.

The Plaintiffs have failed to allege sufficient facts from which it could be established or inferred that any final policymaker of the School District instituted, supported, or acquiesced to a policy or custom of discriminatory enforcement of the School District's discipline policies in response to accusations of sexual harassment. On this basis, Plaintiffs' § 1983 claim against the School District must be dismissed.[8]

### iii. Plaintiffs' sole federal claim will be dismissed with prejudice because any amendment would be futile.

Plaintiffs conceded at Oral Argument that they could not plead that the School Board had actual knowledge of any of the other incidents of allegedly discriminatory application of the School District's disciplinary policies related to sexual harassment. Given these representations and the Court's conclusions that 1) the School Board is the relevant policymaker for the issues here, and; 2) that the principal's knowledge of the other incidents cannot be "imputed" to the School Board under a common law agency (or any other) theory, the Court concludes that any amendment to the Amended Complaint would be futile. This conclusion is supported by the fact that Plaintiffs have already had a chance to amend their Complaint, as granted by the Court, along with the opportunities to amend as granted by Federal Rule of Civil Procedure 15. And,

---

[8] The failure to identify an action by a final policymaker or the existence of a custom leading to the deprivations of Plaintiffs' rights is sufficient to dismiss Plaintiffs' § 1983 claim. But even if the Court were to conclude that a custom or policy of discriminatory enforcement of the School District's disciplinary policies could plausibly be found to have existed, Plaintiffs would still need to show that that custom or policy "was the "moving force" behind the injury alleged." *Bryant Cty.*, 520 U.S. at 404. That is, Plaintiffs must "demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.*; *see also Bielevicz*, 915 F.2d at 850 ("A plaintiff bears the additional burden of proving that the municipal practice was the proximate cause of the injuries suffered."). The Court reaches no conclusion as to whether the facts alleged in the Amended Complaint could satisfy this causation requirement because Plaintiffs have failed at step 1, that is pleading facts demonstrating the *existence* of the discriminatory School District policy or custom that they allege.

Plaintiffs' counsel further conceded at Oral Argument that, even if granted further leave to amend, Plaintiffs had nothing to add which could show a plausible claim for relief as against the School District. Because any amendment to the Amended Complaint would be futile with respect to Count III, the Court concludes that Count III of the Amended Complaint against the School District should be dismissed with prejudice. *Phillips*, 515 F.3d at 236 (citations omitted).

### b. **Supplemental Jurisdiction**

Subject-matter jurisdiction over Plaintiffs' § 1983 claim was premised on 28 U.S.C. § 1331. The remaining claims in the Amended Complaint are Count I and Count II—which are both claims for defamation solely under Pennsylvania law. The Sherk and Seaman Defendants each bring counterclaims solely under Pennsylvania law as well. (ECF Nos. 109, 111). There is no independent basis for the Court to exercise jurisdiction over any of these claims or counterclaims because they are Pennsylvania-law claims brought by Pennsylvania residents against Pennsylvania residents, (*see* Am. Compl. ¶¶ 2–6), and thus there is no original jurisdiction due to diversity of citizenship, 28 U.S.C. § 1332, or the presence of a federal question, 28 U.S.C. § 1331.[9]

District courts may assert supplemental jurisdiction over state-law claims "that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The Third Circuit has held that Congress, in enacting § 1367(a), intended to codify the "same case or controversy test" as announced by the Supreme Court in *United Mine Workers v. Gibbs*, 383

---

[9] The Court provided notice to all parties prior to the Oral Argument on Seneca Valley's Motion to Dismiss that the Court intended to *sua sponte* evaluate whether jurisdiction over the remaining state-law claims would be appropriate if Seneca Valley's Motion were granted. (ECF No. 121). The Court invited all parties to attend the Oral Argument and express their position on this jurisdictional matter if they so desired. (*Id.*). Counsel for all Defendants were physically present at the Oral Argument to observe the proceedings. The Court inquired as to whether any counsel had a position as to these jurisdictional issues, and no counsel offered a position.

U.S. 715 (1966). *See Lyon v. Whisman*, 45 F.3d 758, 759–60 (3d Cir. 1995). So, the "state and federal claims must derive from a common nucleus of operative facts" and the state and federal claims must be such that a plaintiff "would ordinarily be expected to try them all in one judicial proceeding" in order for supplemental jurisdiction under § 1367(a) to be appropriate. *Id.* (quoting *Gibbs*, 383 U.S. at 725).

But a district court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). If the claims over which the court has original jurisdiction are dismissed before trial, a district court must dismiss the state law claims "unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification" for retaining jurisdiction. *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (quoting *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)).

Accordingly, the Court concludes that Counts I and II of the Amended Complaint, as well as the Sherk and Seaman Defendants' counterclaims, must be dismissed without prejudice because the Court does not have original jurisdiction over these claims and because the Court has concluded that the only claim over which it has original jurisdiction, Count III of the Amended Complaint, must be dismissed pursuant to Rule 12(b)(6). This case remains in its earliest stages. The remaining Defendants have filed their answers and counterclaims, but no Rule 26(f) conference has been held and it is unlikely that significant discovery has been undertaken. There are no considerations of judicial economy, convenience, or fairness to the parties providing this Court with an affirmative justification for retaining jurisdiction over this case in which all parties are Pennsylvania residents and the only remaining causes of action arise solely under Pennsylvania law.

## IV.    CONCLUSION

For the foregoing reasons, the School District's Motion to Dismiss (ECF No. 105) will be GRANTED. Count III of the Amended Complaint will be DISMISSED WITH PREJUDICE. Because there are no federal claims remaining in this case, the Court will decline to exercise supplemental jurisdiction over the remaining claims and counterclaims in this case, pursuant to 28 U.S.C. § 1367(c)(3). Counts I and II of the Amended Complaint, as well as the counterclaims brought by the Sherk and Seaman Defendants, will therefore be DISMISSED WITHOUT PREJUDICE for lack of jurisdiction. The remaining motions pending on the docket (ECF Nos. 122, 123) will be DENIED WITHOUT PREJUDICE AS MOOT, as the Court concludes that it lacks subject-matter jurisdiction over the remaining claims in this case.

An appropriate Order will follow.

Mark R. Hornak
Chief United States District Judge

Dated:    August 30, 2019

cc:    All counsel of record